UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

---------------------------------------------------X
BARBARA E. MURPHY,            :    3:03 CV 00519 (MRK)
    Plaintiff,                           :
                                                 :
    v.                                         :
                                                 :
THE CITY OF STAMFORD and    :
DAVID VECCHIA,                    :    April 6, 2004
    Defendants.                          :
---------------------------------------------------X

## MEMORANDUM OF LAW IN SUPPORT OF PLANTIFF'S MOTION FOR SUMMARY JUDGMENT AGAINT DEFENDANT DAVID VECCHIA

Barbara Murphy (hereinafter, "Murphy") submits this memorandum of law in support of her motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure (hereinafter, "FRCP ____") Summary judgment is appropriate because as discussed below and in the attached Moving Affirmation of Elisabeth Seieroe Maurer sworn to April 6, 2004, and the exhibits annexed thereto (hereinafter, "Maurer Aff"), there is no genuine issue of material fact to be tried and Murphy is entitled to judgment as a matter of law.

I.    **PRELIMINARY STATEMENT**

This action was commenced by Murphy on or about March 20, 2003, alleging various claims against defendant David Vecchia (hereinafter, "Vecchia") and the City of Stamford (hereinafter, "City") including violation of 42 U.S.C. § 1983, breach of contract, civil assault, invasion of privacy by intrusion, intentional infliction of emotional distress, and negligent infliction of

emotional distress. Issue was joined in March 2004, denying liability and asserting affirmative defenses.

On October 29, 2003, Murphy served Requests for Admissions. Vecchia provided no response thereto. Accordingly, pursuant to FRCP 36, the matters as to which admissions were sought are deemed admitted (Murphy's Requests for Admissions is attached as Exhibit "A" to the Maurer Aff). Because those admissions and the documents and the proceedings referred to therein, as well as the pre-trial deposition testimony of Vecchia cover all material facts in the case, there are no genuine issues of material fact to be tried by a jury or the Court and this case is ripe for summary judgment.

## II. FACTS

The undisputed material facts and supporting documents are fully set forth in, or annexed to the Maurer Aff.

In summary, Vecchia has admitted:

1. In 1993, Vecchia was hired as the Purchasing Agent for the City of Stamford. (Admission 1)
2. At the end of 1997 and beginning of 1998, Vecchia began making unwanted sexual advances to Murphy. (Admission 6)
7. a. Vecchia asked Murphy to lunch. (Admission 7a)
   b. Vecchia sent candy to Murphy's office. (Admission 7b)
   c. Vecchia sent cards to Murphy through interoffice mail. (Admission 7c)
   d. Vecchia went to Murphy's office uninvited. (Admission 7d)
10. a. In 1997 and 1998 Vecchia appeared at bars and restaurants that Murphy frequented. (Admission 10a)
    b. Vecchia was generally alone when he was seen at bars and restaurants that Murphy frequented. (Admission 10b)
    c. Vecchia would stare at Murphy while standing near by. (Admission 10c)

2

11. One time, Vecchia repeatedly shouted Murphy's name in a crowded club. (Admission 11)
12. In 1997 and 1998 Vecchia attempted to pay for Murphy's drinks and meals. (Admission 12)
13. Murphy repeatedly declined Vecchia's gifts, even telling the bartender to refuse on her behalf any drinks from Vecchia. (Admission 13)
14. Murphy repeatedly declined Vecchia's gifts because she was not interested. (Admission 14)
15. Murphy repeatedly declined Vecchia's gifts because Vecchia was annoying Murphy. (Admission 15)
16. After seeing Murphy at a nightclub or restaurant, Vecchia would make phone calls to Murphy's home. (Admission 16)
17. After seeing Murphy at a nightclub or restaurant, Vecchia would make repeated phone calls to Murphy's home. (Admission 17)
18. The phone calls consisted of someone breathing heavily, silence or music in the background. (Admission 18)
19. Vecchia began to eavesdrop on conversations that Murphy would have with co-workers while at the Government Center. (Admission 19)
20. Vecchia would send Murphy articles and other materials through interoffice mail related to topics that he had overheard her discussing. (Admission 20)
21. Vecchia located a copy of Murphy's high school yearbook picture. (Admission 21)
22. Vecchia carried the high school photo of Murphy in his briefcase. (Admission 22)
27. In 1997 and 1998 Vecchia began following Murphy from establishments she frequented to her vehicle when she left. (Admission 27)
28. In 1997 and 1998 Vecchia began appearing on Murphy's running path at the same time that she regularly ran. (Admission 28)
29. This running path was over fifteen miles from Vecchia's home. (Admission 29)
30. This running path was several miles from Vecchia's place of employment. (Admission 30)
31. At a United Way sponsored race, Vecchia attempted to run the entire race directly in front of Murphy. (Admission 31)
32. On Valentine's Day, Vecchia tied balloons to Murphy's vehicle which was parked outside of her home. (Admission 32)
33. On Murphy's birthday, Vecchia tied balloons to Murphy's vehicle as it was parked outside of her home. (Admission 33)

34. Vecchia obtained a copy of an internet article titled "Stopping the Stalker" during this time frame. (Admission 34)
35. a. Throughout 1998, Vecchia stared at Murphy. (Admission 35a)
    b. Throughout 1998, Vecchia followed Murphy to various locations. (Admission 35b)
    c. Throughout 1998, Vecchia appeared at Murphy's running path. (Admission 35c)
    d. Throughout 1998, Vecchia sent Murphy gifts through interoffice mail. (Admission 35d)
    e. Throughout 1998, sent Murphy drinks and food which she had repeatedly rejected. (Admission 35e)
36. a. One evening as Murphy left a restaurant, Vecchia followed her to her car. (Admission 36a)
    b. As Murphy started the car, Vecchia stood in front of her car, blocking her from leaving. (Admission 36b)
    c. As Murphy drove forward, Vecchia stayed in the way and Murphy was unable to leave. (Admission 36c)
    d. As a result of Vecchia's actions, Murphy had to put her car in reverse and drive the wrong way on a one-way street to get away. (Admission 36d)
37. a. On another occasion, Murphy left the same restaurant with a friend. Vecchia followed Murphy and a friend out to their car and watched them drive off. (Admission 37a)
    b. Later that evening Murphy had her side-view mirror of her car smashed while the car sat in her driveway. (Admission 37b)
38. a. On March 20, 1998, Murphy was at Brennan's restaurant in Stamford, Connecticut. (Admission 38a)
    b. Vecchia arrived at Brennan's and began staring at Murphy. (Admission 38b)
    c. Murphy left with someone walking her to her car for fear of her safety. (Admission 38c)
    d. Vecchia entered Murphy's car. (Admission 38d)
    e. Vecchia broke into Murphy's car. (Admission 38e)
    f  Vecchia took things from Murphy's car. (Admission 38f)
    g. Vecchia took things from the trunk of Murphy's car. (Admission 38g)
    h. Vecchia took things from the glove compartment of Murphy's car. (Admission 38h)
39. On March 21, 1998, Murphy called Vecchia's home and left a message on his answering machine requesting the return of her things to the Fire Station by 4:00 p.m. (Admission 39)
40. a. Later that night, at approximately 10:30 p.m.,

4

          Murphy received a telephone call from Vecchia. (Admission 40a)

    b. Vecchia told Murphy that he had done what she asked and brought her briefcase to the Fire Station. (Admission 40b)

    c. Vecchia stated that he was sorry. (Admission 40c)

    d. Vecchia stated that he did not know why he had broken into Murphy's car and that he was sorry for causing so much trouble in her life. (Admission 40d)

    e. Murphy shouted in response; "just leave me alone" and hung up the phone. (Admission 40e)

41. a. When Murphy went to retrieve her things at the Fire Station, she found that most of the contents of her briefcase, including her appointment book, an extensive database she was creating for a local attorney and her cell phone charger were missing. (Admission 41a)

    b. Items that had been in the trunk of her car were now in her briefcase. (Admission 41b)

42. Vecchia received a call from Attorney Fraser who demanded that Vecchia return the remainder of Murphy's belongings. (Admission 42)

43. Vecchia agreed to meet Attorney Fraser at Attorney Fraser's office and return some items. (Admission 43)

44. a. Vecchia arrived at Attorney Fraser's office and returned some broken computer discs that had contained the above-referenced "data base", and gave Attorney Fraser one hundred dollars. (Admission 44a)

    b. Vecchia said that the items he had were all that he could find. (Admission 44b)

    c. Vecchia stated that he had thrown most of Murphy's things away. (Admission 44c)

    d. Vecchia produced a letter he had written apologizing for his conduct. (Admission 44d)

    i. Vecchia and his sister, in a conference with Attorney Fraser, begged Murphy not to report him to the City of Stamford. (Admission 44i)

    j. Vecchia promised to stop stalking and harassing Murphy. (Admission 44j)

    k. Vecchia promised to seek psychological treatment. (Admission 44k)

45. Vecchia did not stop stalking Murphy. (Admission 45)

46. Vecchia did not stop harassing Murphy. (Admission 46)

47. Vecchia continued to follow Murphy to bars and restaurants. (Admission 47)

48. Vecchia continued to make numerous hang-up phone calls. (Admission 48)
49. On September 25, 1998, Vecchia met with Fred Manfredonia and William Stover from the Human Resources Department of the City of Stamford. (Admission 49)
50. At that meeting, Vecchia admitted the following: (Admission 50)
    a. His prior conduct toward Murphy both at work and outside of work. (Admission 50a)
    b. His prior agreement to get psychological help. (Admission 50b)
    c. His prior agreement to cease and desist his unwanted behavior towards Murphy. (Admission 50c)
51. Vecchia agreed to cease contact with Murphy during work and on City of Stamford premises. (Admission 51)
52. Vecchia agreed to get counseling. (Admission 52)
59. Vecchia never obtained psychological treatment for his behavior. (Admission 59)
60. Throughout the year of 1999, Vecchia continued to harass his ex-wife. (Admission 60)
61. Vecchia's ex-wife filed a complaint alleging Vecchia's unacceptable and distorted behavior with the State of Connecticut Public Safety, Division of State Police. (Admission 61)
63. In September 2000, Vecchia's harassment of Murphy resumed. (Admission 63)
64. a. In the last week of September of 2000, Murphy was in the Finance area of Stamford Government Center where she saw Vecchia. (Admission 64a)
    b. As soon as Vecchia noticed Murphy, he began staring at her. (Admission 64b)
    c. Murphy walked away from Vecchia, but he continued to stare at her. (Admission 64c)
65. Vecchia placed numerous hang-up telephone calls to Murphy at work in September 2000. (Admission 65)
66. a. On October 5, 2000, Vecchia showed up at a bar where Murphy was with a friend. (Admission 66a)
    b. Vecchia entered the establishment, sat near Murphy and stared at her. (Admission 66b)
    c. Murphy was so disturbed by Vecchia that she and her friend were forced to leave. (Admission 66c)
67. a. That same night, Murphy's caller ID indicated she had received a phone call from a pay phone located on Route 7 in Wilton. (Admission 67a)
    b. The pay phone is on Vecchia's way home from work in Stamford. (Admission 67b)

6

        c.    Vecchia called Murphy from pay phones. (Admission 67c)

68.  Vecchia placed a "frog" ornament in the front lawn of Murphy's home. (Admission 68)

69.  In October 2000, Murphy reported Vecchia's harassment of her to the Stamford Police Department (hereinafter, the "Police"). (Admission 69)

70.  In late October or early November of 2000, the Police met with Vecchia. (Admission 70)

71.  Vecchia was arrested and charged with stalking. (Admission 71)

72.  The document attached hereto as <u>Exhibit 4</u> is a complete copy of the Arrest Warrant Application. (Admission 72)
  - a.  The information contained <u>in Exhibit 4</u> is true. (Admission 72a)
  - b.  The document attached hereto as <u>Exhibit 4</u> is authentic. (Admission 72b)
  - c.  <u>Exhibit 4</u> is a public record and meets the requirements of Rule 803(8) of the Federal Rules of Evidence. (Admission 72c)

73.  The arrest warrant was issued upon the following information:
  - a.  Murphy worked for the City of Stamford and through work became acquainted with Vecchia. (Admission 73a)
  - b.  Vecchia began harassing, following, and stalking her both at work and after work hours. (Admission 73b)
  - c.  Murphy reported Vecchia's harassing behavior to City of Stamford officials. (Admission 73c)
  - d.  The City of Stamford interviewed Vecchia, he admitted stalking Murphy and he agreed to stop harassing her and seek counseling. (Admission 73d)
  - e.  Despite Vecchia's agreement, he continued to harass Murphy. (Admission 73e)
  - f.  Murphy claimed that Vecchia was involved in criminal mischief, harassing telephone calls, hang-up telephone calls, along with other harassing conduct. (Admission 73f)
  - g.  An officer of the Redding Police Department verified that Vecchia had several complaints filed against him by his ex-wife. The complaints consisted of criminal mischief, harassing telephone calls, unusual behavior, and stalking. (Admission 73g)
  - h.  It was determined that the harassing telephone calls to Vecchia's ex-wife came from a phone located at

                Vecchia's mother's home, Vecchia's place of work, and areas around Vecchia's residence. (Admission 73h)

        i.    Vecchia's ex-wife had received approximately 75 letters from Vecchia. (Admission 73i)

74.    After Vecchia's arrest, the City of Stamford placed him on paid administrative leave from work. (Admission 74)

75.    The City of Stamford in 1998 had a "zero tolerance" policy regarding sexual harassment. (Admission 75)

76.    The City of Stamford in 1999 had a "zero tolerance" policy regarding sexual harassment. (Admission 76)

77.    The City of Stamford in 2000 had a "zero tolerance" policy regarding sexual harassment. (Admission 77)

86.    Vecchia failed to comply with his agreement with Murphy. (Admission 86)

87.    Vecchia failed to comply with his agreement with the City of Stamford. (Admission 87)

88.    The City of Stamford did not to terminate Vecchia's employment until 2002. (Admission 88)

89.    On January 23, 2002, Vecchia entered into an agreement to plead guilty to criminal trespass and disorderly conduct. (Admission 89)

91.    Vecchia was terminated by the City of Stamford over a year after he was arrested for stalking. (Admission 91)

92.    Vecchia spent a year on paid leave. (Admission 92)

99.    Vecchia permitted a pattern, practice, and course of conduct that violated the City of Stamford's Sexual Harassment Polices and Procedures. (Admission 99)

100.    Vecchia tolerated a pattern, practice, and course of conduct that violated the City of Stamford's Sexual Harassment Policies and Procedures. (Admission 100)

101.    Vecchia engaged in a pattern, practice, and course of conduct that violated the City of Stamford's Sexual Harassment Policies and Procedures. (Admission 101)

102.    Vecchia failed to refrain from violating the City of Stamford's Sexual Harassment Policies and Procedures. (Admission 102.)

103.    Vecchia failed to enforce the City of Stamford's Sexual Harassment Polices and Procedures. (Admission 103)

104.    The City of Stamford has a "Zero Tolerance" policy. (Admission 104)

105.    Vecchia was aware his conduct violated the Policy and Procedure of the City of Stamford. (Admission 105)

106.    The City of Stamford and Vecchia entered into an agreement that stated: (Admission 106)

   a. Vecchia would be able to remain at work only if he discontinued the harassment of Murphy. (Admission 106a)
   b. Sought psychological treatment. (Admission 106b)
   c. Reported on the progress of his psychological treatment. (Admission 106c)
107. Vecchia made unwelcome advances at Murphy while working for the City of Stamford. (Admission 107)
108. Vecchia made unwelcome advances at Murphy after work hours. (Admission 108)
109. Vecchia left a bullet on Murphy's deck at home. (Admission 109)
110. Vecchia left balloons on Murphy's car while it was parked at her home. (Admission 110)
111. Vecchia sent Murphy numerous articles and packages through interoffice mail. (Admission 111)

## III.   ARGUMENT

### A.   Because there is no genuine issue of material fact, summary judgment is appropriate.

Summary judgment shall be rendered if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FRCP 56(c). Thus, if this Court determines there are no issues of material fact to be tried, summary judgment finding liability against Vecchia should be granted. Southern New England Telephone Co. v. U.S., 886 F. Supp. 211 (D. Conn. 1995); see Hionis Intern. Enterprises, Inc. v. Funding Corp., 867 F. Supp. 268 (D. Del. 1994), aff'd, 61 F.3d 895 (3d Cir. 1995).

FRCP 36(a) provides that as to each matter as to which an admission is requested, such "matter is admitted unless, within 30 days after service of the request, ... the party to whom the request is directed serves upon the party requesting the admission a written answer or objection addressed to the matter..." Murphy's Requests for Admissions were served on October

29, 2003, (see Maurer Aff'd, Exhibit ___). No answer or objection was timely served. Accordingly, the matters contained in Murphy's Requests for Admissions are "admitted"; and FRCP 36(b) provides that "any matter admitted under this rule is conclusively established..." Moosman v. Joseph P. Blitz, Inc., 358 F.2d 686 (2d Cir. 1966); Mangan v. Broderick & Bascom Rope Co., 351 F.2d 24 (7th Cir. 1965), cert denied, 383 U.S. 926, 86 Ct. 930 (1966).

Admissions may be used in support of summary judgment, as facts admitted due to the failure of a party to respond to a request for admissions. Donovan v. Carls Drug Co., Inc., 703 F.2d 650 (2d Cir. 1983); Nic-O-Val Music Co., v. P.O.S. Radio, Inc., 656 F. Supp. 826 (M.D. Fla. 1987); An-Port, Inc. V. MBR Industries, Inc., 772 F. Supp. 1301 (d. Puerto Rico 1991), motion to amend denied, 142 F.R.D. 47 (1992); Weva Oil Corp v. Belco Petroleum Corp., 68 F.R.D. 663 (N.D. W. Va. 1975); In re Mack, 330 F. Supp. 737 (S.D. Tex. 1970); Mountcastle v. U.S., 226 F. Supp. 706 (M.D. Tenn. 1963).

Accordingly, and because Vecchia is deemed to have admitted all of the matters set forth in Murphy's Requests for Admissions, as well as based on the referred to deposition exhibits and other documents and Vecchia's deposition testimony, there is no genuine issue of material to be tried and summary judgment is warranted.

**B.    Vecchia in his individual capacity violated 42 U.S.C. § 1983**

The complaint asserted and, as described above, Vecchia has

admitted that:

> 84. At all times relevant herein, Vecchia, in his individual capacity, was a "person" acting under color of state law for purposes of 42 U.S.C. §1983.
> 85. Vecchia permitted, tolerated, and engaged in a pattern, practice, and course of conduct that has violated the City's Sexual Harassment Policies and Procedures and such facts and circumstances are relevant and important to a fair, proper, and complete investigation of this complaint.
> 86. Vecchia has failed to carry out his duty of supervision by failing to refrain from and enforce the City's Sexual Harassment Polices and Procedures. The City has a "Zero Tolerance" policy, practice and procedure.
> 87. As Vecchia was the perpetrator of the sexual harassment, he was well aware his conduct violated the Policy and Procedure of the City.
> 88. Vecchia intentionally deprived Murphy of the equal protection of the law by subjecting her to repeated sexual harassment and by not refraining or remedying the situation after Murphy made repeated complaints of sexual harassment.
> 89. As a result of Vecchia's intentional conduct, Murphy has suffered damage that she should be compensated for.

The Second Circuit in <u>Hayut v. State Univ. of N.Y.,</u> 352 F.3d 733,743 (2nd Cir 2003) tells us:

> In order to survive a summary judgment motion on her section 1983 claim [*744] for sexual harassment, Hayut must proffer evidence that (1) Young was acting "under color of state law" at the time he committed the conduct complained of, and (2) that his conduct deprived her of "'rights, privileges or immunities secured by the Constitution or laws of the United States.'" Greenwich Citizens Comm., Inc. v. Counties of Warren & Washington Indus. Dev. Agency, 77 F.3d 26, 29-30 (2d Cir. 1996) [**22] (quoting Parratt v. Taylor, 451 U.S. 527, 535, 68 L. Ed. 2d 420, 101 S. Ct. 1908 (1981)). Id.

There can be no dispute that Vecchia as an employee of the City of Stamford, acted "under color of state law" or that his repeated, offensive, and pervasive stalking violated Barbara Murphy's constitutional right under the 4th

11

and 15th Amendments to be free of sexual harassment by a supervisor and co-worker thus causing him to violate 42 USC § 1983. Therefore, Vecchia should be found liable on the First Cause of Action (42 U.S.C. §1983 violation by Vecchia in his individual capacity).

### C. Vecchia in his official capacity as a Purchasing Agent for the City of Stamford violated 42 U.S.C. § 1983

The complaint asserted and, as described above, Vecchia has admitted that:

> 90. The allegations of paragraphs 1 – 89 are fully and completely incorporated by reference into this paragraph 90.
> 91. At all relevant times herein, Vecchia, as a Purchasing Agent for the City of Stamford, was a "person" acting under color of state law for purposes of 42 U.S.C. §1983.
> 92. Vecchia intentionally subjected Murphy to a deprivation of the equal protection of the law by engaging in repeated acts of sexual harassment and by not adequately refraining or remedying his action when Murphy made complaints of sexual harassment.
> 93. As a result of Vecchia's intentional conduct, Murphy has suffered damage that she should be compensated for.

For all of the reasons stated in B. above, Vecchia is equally liable on the Second Cause of Action (42 U.S.C. §1983 violation by Vecchia in his official capacity).

### D. Vecchia should be found liable because he breached the contract that he made with the City for Murphy's benefit

The complaint asserted and, as described above, Vecchia has admitted that:

> 127. In an effort to stop Vecchia from harassing Murphy, the City and Vecchia entered into an agreement, that stated Vecchia would be able to remain at work only if he discontinued the

128. harassment of Murphy, sought psychological counseling and reported on the progress of his treatment to the City.
129. Both the City and Vecchia entered into this agreement intending it to benefit Murphy by discontinuing the harassment against Murphy.
130. Vecchia breached the contract that he made with the City for the benefit of Murphy by failing to seek psychological counseling, by failing to report his treatment, and by failing to cease harassing Murphy.
131. As a result of Vecchia's breach of the contract between himself and the City for the benefit of Murphy, Murphy has suffered damage that she should be compensated for.

To prove a claim of breach of a third party beneficiary contract, the plaintiff must show that she was the intended beneficiary of the contract and that the breach caused her damage.

> The ultimate test to be applied [in determining whether a person has a right of action as a third-party beneficiary] is whether the intent of the parties to the contract was that the promisor should assume a direct obligation to the third-party [beneficiary] and ... that 'intent is to be determined from the terms of the contract read in the light of the circumstances attending its making, including the motives and purposes of the parties . . . It is not in all instances necessary that there be express language in the contract creating a direct obligation to the claimed third-party beneficiary . . ." (Citations omitted; emphasis omitted; internal quotation marks omitted.) Grigerik v. Sharpe, 247 Conn. 293, 311-12, 721 A.2d 526 (1998). "The intent to confer a benefit is irrelevant to the determination of whether [the plaintiff is] a third-party beneficiary . . . rather, the appropriate inquiry is whether the parties . . . intended to create [*4] a direct obligation from one party . . . to the third party." (Citations omitted; emphasis omitted; internal quotation marks omitted.) Id., 313. Taylor v. Fleet Fin. Group, 2000 Conn. Super. LEXIS 2038 (JD Hartford 2000)

In this matter, Vecchia has admitted that he entered into an agreement with the City of Stamford to cease all contact with Barbara Murphy. However, he has also admitted that he has failed to do so causing her substantial damage.

13

Thus, Vecchia should be found liable for the Seventh Cause of Action (Breach of Contract By Vecchia).

### E. Vecchia should be found liable because he invaded Murphy's privacy

The complaint asserted and, as described above, Vecchia has admitted that:

146. Vecchia made many unwelcome advances at Murphy both while working for the City and after work hours.
147. Vecchia conduct was a continuous harassment of Murphy for a period of time.
148. Vecchia trespassed onto Murphy's property and broke into her vehicle to steal items of hers.
149. Vecchia left a bullet on Murphy's deck at home.
150. Vecchia left a frog head puppet on Murphy's lawn.
151. Vecchia left balloons on Murphy's car while it was parked at her home.
152. Vecchia would continuously stare at Murphy in an abnormal manner to purposely frighten her.
153. Vecchia intentionally intruded into the solitude of life that Murphy had.
154. Vecchia intentionally and continuously interfered with the private affairs and concerns of Murphy.
155. Vecchia conducted himself in the manner that any reasonable person would find highly offensive.
156. As a result of Vecchia's conduct, Murphy has suffered damage that she should be compensated for.

Connecticut courts have found that a person can be found liable for invasion of privacy as follows:

> In Goodrich v. Waterbury Republican-American, Inc., 188 Conn. 107, 127-28, 448 A.2d 1317 (1982) the Supreme Court recognized a cause of action for **invasion of privacy.** In doing so, the Court adopted the four categories of **invasion of privacy** as set forth in 3 Restatement (Second), Torts 652A. [HN2] Accordingly, a cause of action for **invasion of privacy** can exist where there is "(a) unreasonable intrusion upon the seclusion of another******

Comments to the section of the Restatement adopted by the Supreme Court in Goodrich, however, state that "One who intentionally intrudes physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to **liability** to the other for **invasion of privacy,** if the intrusion would be highly offensive to a reasonable person." 3 Restatement (Second) of Torts, 652B (1977).

Vecchia admitted that he did each of the things asserted in the complaint, following Murphy, leaving things on her property, breaking into her car and stealing her property. By his admissions as well as his testimony when he pled guilty to breaking and entering Murphy's car, he has admitted liability for invasion of Murphy's privacy.

### F. Vecchia should be found liable because he committed Intentional infliction of emotional distress

The complaint asserted and, as described above, Vecchia has admitted that:

157. Vecchia made many unwelcome advances to Murphy both while working for the City and after work hours.
158. Murphy became fearful for her safety.
159. Vecchia intentionally began to show up at places the Murphy would frequent.
160. Vecchia trespassed onto Murphy's property and broke into her vehicle to steal items of hers.
161. Vecchia left a bullet on her deck, a frog in the front lawn, balloons on her car, followed her at work, and sent her numerous articles and packages through interoffice mail.
162. Vecchia would continuously stare at Murphy in an abnormal manner to purposely frighten her.
163. Vecchia intended to inflict emotional distress or he knew or should have known that emotional distress was likely as a result of his conduct.
164. Vecchia's conduct toward Murphy was extreme and outrageous.
165. Murphy's emotional distress was caused by the continuous conduct of Vecchia.

166. Murphy's emotional distress is severe, caused her physical damage and affects her life on a daily basis.
167. As a result of the Vecchia's conduct, Murphy has suffered damage that she should be compensated for.

To prevail on a claim for intentional infliction of emotional distress, the plaintiff must show: "(1) that the actor intended to inflict emotional distress; or that he knew or should have known that emotional distress was a likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." (Internal quotation marks omitted.) Appleton v. Board of Education, 254 Conn. 205, 210, 757 A.2d 1059 (2000). HN6 "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse resentment against the actor, and lead him to exclaim, Outrageous!" (Internal quotation marks omitted.) Id. at 210-11. "Liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." Hiers v. Cohen, 31 Conn. Supp. 305, 308-09, 329 A.2d 609 (1973). Boanno v. Papcin, 2001 Conn. Super. LEXIS 233 (JD Ansonia 2001)

Vecchia has admitted that he followed Murphy, called her numerous times late at night at her home, left a variety of things on her car and lawn including a bullet, broke into her car and stole things causing her substantial emotional and physical distress. Thus, Vecchia should be found liable for the Eleventh Cause Of Action (Intentional Infliction of Emotional Distress by Vecchia).

### G. Vecchia should be found liable because he committed negligent infliction of emotional distress

The complaint asserted and, as described above, Vecchia has admitted that:

170. Vecchia made many unwelcome advances to Murphy both while working for the City and after work hours.
171. Murphy became fearful for her safety.
172. Vecchia began to show up at places the Murphy would frequent.
173. Vecchia trespassed onto Murphy's property and broke into her vehicle to steal items of hers.
174. Vecchia left a bullet on her deck, a frog in the front lawn, balloons on her car, followed her at work, and sent her numerous articles and packages through interoffice mail.
175. Vecchia would continuously stare at Murphy in an abnormal manner as to purposely frighten her.
176. Vecchia should have realized that his conduct involved an unreasonable risk of causing emotional distress and that distress, if it were caused, might result in illness or bodily harm.
177. Murphy's emotional distress was caused by the continuous conduct of Vecchia.
178. Murphy's emotional distress is severe, causing illness and bodily harm and affects her life on a daily basis.
179. As a result of the Vecchia's conduct, Murphy has suffered damage that she should be compensated for.

The Courts have determined that:

To recover damages for negligent infliction of emotional distress, the plaintiff has the burden of proving that "the defendant should have realized that its conduct involved an unreasonable risk of causing emotional distress and that that distress, if it were caused, might result in illness or bodily harm." (Internal quotation marks omitted.) <u>Ancona v. Manafort Bros, Inc.</u> 56 Conn. App. 701, 713, 746 A.2d 184, cert. denied, 252 Conn. 954, 749 A.2d 1202 (2000). <u>Boanno v. Papcin</u>, 2001 Conn. Super. LEXIS 233 (JD Ansonia 2001)

Without a doubt, Vecchia's admitted years of repeated harassment and stalking "involved an unreasonable risk of causing emotional distress " resulting

17

in illness and bodily harm. Vecchia has admitted that he followed Murphy, called her numerous times late at night at her home, left a variety of things on her car and lawn including a bullet, broke into her car and stole things causing her substantial emotional and physical distress. Thus, Vecchia should be found liable for the Twelfth Cause of Action (Negligent Infliction of Emotional Distress by Vecchia).

**H.    Conclusion**

For all of the reasons stated above and in the accompanying Affirmation, Murphy respectfully requests that this court grant summary judgment on each count.

Dated: April 6, 2004

PLAINTIFF,
BARBARA E. MURPHY

BY: _____
Elisabeth Seieroe Maurer (ct11445)
Law Offices of Elisabeth Seieroe Maurer, PC
871 Ethan Allen Hwy., Suite 202
Ridgefield, CT 06877
Phone (203) 438-1388
Fax (203) 431-0357
E-mail esmaurer@esmlaw.net