# EXHIBIT A

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
------------------------------------------------X
BARBARA E. MURPHY,              :        3:03 CV 00519 (MRK)
       Murphy,                  :
                                :
            v.                  :        PLAINTIFF'S REQUEST
                                :        FOR ADMISSIONS
THE CITY OF STAMFORD and        :
DAVID VECCHIA,                  :        October 29, 2003
       Defendants.              :
------------------------------------------------X
```

The Plaintiff, Barbara E. Murphy, (hereinafter, "Murphy"), pursuant to Federal Rule of Civil Procedure 36, hereby requests that Defendant, David Vecchia (hereinafter, "Vecchia"), admit the genuineness and truth of the matters set forth herein.

Pursuant to Rule 36(a) of the Federal Rules of Civil Procedure, Defendant shall provide a written answer or objection to each of the following admissions within thirty (30) days from the date of service of these admissions. Any admission made by a party is for the purpose of the pending action only and is not an admission for any other purpose, nor may it be used against the party in any other proceeding.

## A.    DEFINITIONS:

1.    "Document(s)": The term "document", as used throughout this particular document, refers to any kind of written, typewritten, printed or graphic material or matter, e-mail, reproduction, xerographic reproduction or photocopy thereof, or any other tangible means of recording or memorializing any form of communication,

intelligence, or representation however produced or reproduced, of every kind and description in the actual or constructive possession, custody or control or producing parties, their agents, attorneys, accountants, and/or any other person authorized to act on behalf of said party, wherever located, including specifically, but without limiting the generality of the foregoing, the originals (or copies where originals are not available) and all copies that are not identical to the original, of file indices, file folders, notes, memoranda, letters, telegrams, books, accounts, microfilm, microfiche, ultrafiche, papers, certificates, notices, computer tapes, computer cards, computer print-outs, inter-office communications, intra-office communications, visual recordings, motion pictures, videotapes, audio tapes, photographs, reports, drafts, calendars, appointment books, diaries, minutes of meetings of boards of directors, notices of meetings or conversations, catalogues, written agreements, plans, charts, maps, diagrams, contracts, checks, check registers, passbooks, books of account, statements, confirmations, financial statements, statements of income, receipts, invoices, bills, cables, leases, or any other form of writing or other material similar to the foregoing, however denominated by Defendants.

2.    . "Communication": The term "communication" means the transmittal of information, the information transmitted, and any process by which information is transmitted.

3.    "Plaintiff": The term "Plaintiff" refers to Barbara E. Murphy, who shall be referred to as "Murphy" throughout this document.

4.      "Defendant": The term "Defendant" refers to The City of Stamford and its officers, directors, employees, members, partners, corporate parents, subsidiaries, affiliates, or any similar person.  This definition is not intended to impose a discovery obligation on any person who is not a party to this litigation.

5.      "Defendant": The term "Defendant" refers to David Vecchia, who shall be referred to as "Vecchia" throughout this document.

6.      "Person": The term "person" is defined as any natural person or business, legal or governmental entity or association.

7.      "Regarding": The term "regarding" means concerning, relating to, referring to, describing, evidencing or constituting.

8.      "Relate(s)": The term "relate(s)" means concerning, reflecting, regarding, referring to, describing, evidencing or constituting.

9.      "Relevant Time Period": The phrase "relevant time period" as used throughout this document shall be construed to encompass the time period from January 1, 1993 through January 1, 2003.

**B.     RULES OF CONSTRUCTION:**

1.      "All/Any": The terms "all" and "any" shall be construed to include all and any of what may be requested.

2.      "And/Or": The connectives "and" and "or" shall be construed

3

either disjunctively or conjunctively as necessary to bring within the scope of the discovery requests all responses that might otherwise be construed to be outside its scope.

## C.    INSTRUCTIONS:

1.    Each admission shall be answered separately and fully in writing under oath, unless it is objected to, in which event the objecting party shall state the reasons for objection and shall answer to the extent that the admission is not objectionable.

2.    The answers are to be signed by the person making them, and the objections signed by the attorney making them.

3.    All grounds for an objection to an admission shall be stated with specificity.

4.    When answering the following admissions, please respond in consideration the relevant time period. The relevant time period for the purpose of answering the requested admissions herein shall be construed to encompass the time period from January 1, 1993 through January 1, 2003.

4

## REQUEST FOR ADMISSIONS

1.     In 1993, Vecchia was hired as the Purchasing Agent for the City of Stamford.

2.     Vecchia's position as Purchasing Agent for the City of Stamford was a supervisory position.

3.     In 1996, Murphy was transferred to administrative assistant/data systems for the City of Stamford Fire Department.

4.     In or around 1997, Murphy began working with Vecchia on several City of Stamford committees.

5.     In 1997, Vecchia and Murphy worked for the City of Stamford in different buildings.

6.     At the end of 1997 and beginning of 1998, Vecchia began making unwanted sexual advances to Murphy.

7.     a.     Vecchia asked Murphy to lunch.

       b.     Vecchia sent candy to Murphy's office.

       c.     Vecchia sent cards to Murphy through interoffice mail.

       d.     Vecchia went to Murphy's office uninvited.

8.     In late 1997 and 1998, Murphy repeatedly told Vecchia to stop making "advances" toward her as she was not interested.

9.    After Murphy told Vecchia to stop making "advances" toward her, he began to "stalk" her.

10.    a.    In 1997 and 1998 Vecchia appeared at bars and restaurants that Murphy frequented.

       b.    Vecchia was generally alone when he was seen at bars and restaurants that Murphy frequented.

       c.    Vecchia would stare at Murphy while standing near by.

11.    One time, Vecchia repeatedly shouted Murphy's name in a crowded club.

12.    In 1997 and 1998 Vecchia attempted to pay for Murphy's drinks and meals.

13.    Murphy repeatedly declined Vecchia's gifts, even telling the bartender to refuse on her behalf any drinks from Vecchia.

14.    Murphy repeatedly declined Vecchia's gifts because she was not interested.

15.    Murphy repeatedly declined Vecchia's gifts because Vecchia was annoying Murphy.

16.    After seeing Murphy at a nightclub or restaurant, Vecchia would make phone calls to Murphy's home.

17.    After seeing Murphy at a nightclub or restaurant, Vecchia would  make repeated phone calls to Murphy's home.

18.    The phone calls consisted of someone breathing heavily, silence or music in the background.

19.    Vecchia began to eavesdrop on conversations that Murphy would have with co-workers while at the Government Center.

20.    Vecchia would send Murphy articles and other materials through interoffice mail related to topics that he had overheard her discussing.

21.    Vecchia located a copy of Murphy's high school yearbook picture.

22.    Vecchia carried the high school photo of Murphy in his briefcase.

23.    The document attached hereto as Exhibit 1 is a copy of the yearbook page discovered by Vecchia's ex-wife.

24.    Exhibit 1 is a public record and meets the requirements of Rule 803(8) of the Federal Rules of Evidence.

25.    The information contained in Exhibit 1 is true.

26.    The document attached hereto as Exhibit 1 is authentic.

27.    In 1997 and 1998 Vecchia began following Murphy from establishments she frequented to her vehicle when she left.

28.    In 1997 and 1998 Vecchia began appearing on Murphy's running path at the same time that she regularly ran.

29.    This running path was over fifteen miles from Vecchia's home.

30.    This running path was several miles from Vecchia's place of employment.

31.    At a United Way sponsored race, Vecchia attempted to run the entire race directly in front of Murphy.

32.    On Valentine's Day, Vecchia tied balloons to Murphy's vehicle which was parked outside of her home.

33.    On Murphy's birthday, Vecchia tied balloons to Murphy's vehicle as it was parked outside of her home.

34.    Vecchia obtained a copy of an internet article titled "Stopping the Stalker" during this time frame.

35.    a.    Throughout 1998, Vecchia stared at Murphy.

        b.    Throughout 1998, Vecchia followed Murphy to various locations.

        c.    Throughout 1998, Vecchia appeared at Murphy's running path.

        d.    Throughout 1998, Vecchia sent Murphy gifts through interoffice mail.

        e.    Throughout 1998, sent Murphy drinks and food which she had repeatedly rejected.

36.    a.    One evening as Murphy left a restaurant, Vecchia followed her to her car.

        b.    As Murphy started the car, Vecchia stood in front of her car, blocking her from leaving.

        c.    As Murphy drove forward, Vecchia stayed in the way and Murphy was unable to leave.

8

      d.     As a result of Vecchia's actions, Murphy had to put her car in reverse and drive the wrong way on a one-way street to get away.

37.   a.    On another occasion, Murphy left the same restaurant with a friend. Vecchia followed Murphy and a friend out to their car and watched them drive off.

      b.     Later that evening Murphy had her side-view mirror of her car smashed while the car sat in her driveway.

38.   a.    On March 20, 1998, Murphy was at Brennan's restaurant in Stamford, Connecticut.

      b.     Vecchia arrived at Brennan's and began staring at Murphy.

      c.     Murphy left with someone walking her to her car for fear of her safety.

      d.     Vecchia entered Murphy's car.

      e.     Vecchia broke into Murphy's car.

      f.     Vecchia took things from Murphy's car.

      g.     Vecchia took things from the trunk of Murphy's car.

      h.     Vecchia took things from the glove compartment of Murphy's car.

39.   On March 21, 1998, Murphy called Vecchia's home and left a message on his answering machine requesting the return of her things to the Fire Station by 4:00 p.m.

40.   a.    Later that night, at approximately 10:30 p.m., Murphy received a telephone call from Vecchia.

b.      Vecchia told Murphy that he had done what she asked and brought her briefcase to the Fire Station.

c.      Vecchia stated that he was sorry.

d.      Vecchia stated that he did not know why he had broken into Murphy's car and that he was sorry for causing so much trouble in her life.

e.      Murphy shouted in response; "just leave me alone" and hung up the phone.

41.    a.      When Murphy went to retrieve her things at the Fire Station, she found that most of the contents of her briefcase, including her appointment book, an extensive database she was creating for a local attorney and her cell phone charger were missing.

b.      Items that had been in the trunk of her car were now in her briefcase.

42.    Vecchia received a call from Attorney Fraser who demanded that Vecchia return the remainder of Murphy's belongings.

43.    Vecchia agreed to meet Attorney Fraser at Attorney Fraser's office and return some items.

44.    a.      Vecchia arrived at Attorney Fraser's office and returned some broken computer discs that had contained the above-referenced "data base", and gave Attorney one hundred dollars.

    b.    Vecchia said that the items he had were all that he could find.

    c.    Vecchia stated that he had thrown most of Murphy's things away.

    d.    Vecchia produced a letter he had written apologizing for his conduct.

    e.    The document attached hereto as <u>Exhibit 2</u> is a copy of the letter Vecchia wrote, apologizing for his conduct.

    f.    The information contained <u>in Exhibit 2</u> is true.

    g.    The document attached hereto as <u>Exhibit 2</u> is authentic.

    h.    Vecchia's sister, an attorney located in Washington, DC, participated in the meeting between Vecchia and Attorney Fraser via telephone.

    i.    Vecchia and his sister, in a conference with Attorney Fraser, begged Murphy not to report him to the City of Stamford.

    j.    Vecchia promised to stop stalking and harassing Murphy.

    k.    Vecchia promised to seek psychological treatment.

45.    Vecchia did not stop stalking Murphy.

46.    Vecchia did not stop harassing Murphy.

47.    Vecchia continued to follow Murphy to bars and restaurants.

48.    Vecchia continued to make numerous hang-up phone calls.

49.    On September 25, 1998, Vecchia met with Fred Manfredonia and William Stover from the Human Resources Department of the City of Stamford.

50.    At that meeting, Vecchia admitted the following:

11

a.  His prior conduct toward Murphy both at work and outside of work.

b.  His prior agreement to get psychological help.

c.  His prior agreement to cease and desist his unwanted behavior towards Murphy.

51.  Vecchia agreed to cease contact with Murphy during work and on City of Stamford premises.

52.  Vecchia agreed to get counseling.

53.  The City of Stamford never drafted an agreement for Vecchia to sign.

54.  The City of Stamford never confirmed Vecchia was receiving counseling.

55.  The City of Stamford never followed up with Vecchia regarding Vecchia's progress in therapy.

56.  The City of Stamford never saw to it that Vecchia attended therapy sessions.

57.  The City of Stamford never received any progress reports from Vecchia.

58.  The City of Stamford never monitored Vecchia's conduct regarding Murphy in any manner.

59.  Vecchia never obtained psychological treatment for his behavior.

60.  Throughout the year of 1999, Vecchia continued to harass his ex-wife.

61.  Vecchia's ex-wife filed a complaint alleging Vecchia's unacceptable and distorted behavior with the State of Connecticut Public Safety, Division of State Police.

62.     The document attached hereto as <u>Exhibit 3</u> is a copy of the complaint filed by Vecchia's ex-wife with the State of Connecticut Public Safety, Division of State Police, alleging Vecchia's unacceptable and distorted behavior.

      a.     <u>Exhibit 3</u> is a public record and meets the requirements of Rule 803(8) of the Federal Rules of Evidence.

      b.     The information contained <u>in Exhibit 3</u> is true.

      c.     The document attached hereto as <u>Exhibit 3</u> is authentic.

63.     In September 2000, Vecchia's harassment of Murphy resumed.

64.     a.     In the last week of September of 2000, Murphy was in the Finance area of Stamford Government Center where she saw Vecchia.

      b.     As soon as Vecchia noticed Murphy, he began staring at her.

      c.     Murphy walked away from Vecchia, but he continued to stare at her.

65.     Vecchia placed numerous hang-up telephone calls to Murphy at work in September 2000.

66.     a.     On October 5, 2000, Vecchia showed up at a bar where Murphy was with a friend.

      b.     Vecchia entered the establishment, sat near Murphy and stared at her.

      c.     Murphy was so disturbed by Vecchia that she and her friend were forced to leave.

67.   a.   That same night, Murphy's caller ID indicated she had received a phone call from a pay phone located on Route 7 in Wilton.

      b.   The pay phone is on Vecchia's way home from work in Stamford.

      c.   Vecchia called Murphy from pay phones.

68.   Vecchia placed a "frog" ornament in the front lawn of Murphy's home.

69.   In October 2000, Murphy reported Vecchia's harassment of her to the Stamford Police Department (hereinafter, the "Police").

70.   In late October or early November of 2000, the Police met with Vecchia.

71.   Vecchia was arrested and charged with stalking.

72.   The document attached hereto as Exhibit 4 is a complete copy of the Arrest Warrant Application.

      a.   The information contained in Exhibit 4 is true.

      b.   The document attached hereto as Exhibit 4 is authentic.

      c.   Exhibit 4 is a public record and meets the requirements of Rule 803(8) of the Federal Rules of Evidence.

73.   The arrest warrant was issued upon the following information:

      a.   Murphy worked for the of Stamford and through work became acquainted with Vecchia.

      b.   Vecchia began harassing, following, and stalking her both at work and after work hours.

    c.    Murphy reported Vecchia's harassing behavior to City of Stamford officials.

    d.    The City of Stamford interviewed Vecchia, he admitted stalking Murphy and he agreed to stop harassing her and seek counseling.

    e.    Despite Vecchia's agreement, he continued to harass Murphy.

    f.    Murphy claimed that Vecchia was involved in criminal mischief, harassing telephone calls, hang-up telephone calls, along with other harassing conduct.

    g.    An officer of the Redding Police Department verified that Vecchia had several complaints filed against him by his ex-wife. The complaints consisted of criminal mischief, harassing telephone calls, unusual behavior, and stalking.

    h.    It was determined that the harassing telephone calls to Vecchia's ex-wife came from a phone located at Vecchia's mother's home, Vecchia's place of work, and areas around Vecchia's residence.

    i.    Vecchia's ex-wife had received approximately 75 letters from Vecchia.

74.    After Vecchia's arrest, the City of Stamford placed him on paid administrative leave from work.

75.    The City of Stamford in 1998 had a "zero tolerance" policy regarding sexual harassment.

76.    The City of Stamford in 1999 had a "zero tolerance" policy regarding sexual harassment.

77.    The City of Stamford in 2000 had a "zero tolerance" policy regarding sexual harassment.

78.    Vecchia admitted calling Murphy to the City of Stamford.

79.    Vecchia admitted following Murphy to the City of Stamford.

80.    Vecchia admitted giving gifts to Murphy to the City of Stamford.

81.    Vecchia admitted staring at Murphy to the City of Stamford.

82.    Vecchia admitted calling Murphy to the City of Stamford.

83.    Vecchia admitted following Murphy to the City of Stamford's Human Resources Department.

84.    Vecchia admitted giving gifts to Murphy to the City of Stamford's Human Resources Department.

85.    Vecchia admitted staring at Murphy to the City of Stamford's Human Resources Department.

86.    Vecchia failed to comply with his agreement with Murphy.

87.    Vecchia failed to comply with his agreement with the City of Stamford.

88.    The City of Stamford did not to terminate Vecchia's employment until 2002.

89.    On January 23, 2002, Vecchia entered into an agreement to plead guilty to criminal trespass and disorderly conduct.

16

90.    The document attached as <u>Exhibit 5</u> hereto is an excerpt of the court transcript.

a.    <u>Exhibit 5</u> is a public record and meets the requirements of Rule 803(8) of the Federal Rules of Evidence.

b.    The information contained <u>in Exhibit 5</u> is true.

c.    The document attached hereto as <u>Exhibit 5</u> is authentic.

91.    Vecchia was terminated by the City of Stamford over a year after he was arrested for stalking.

92.    Vecchia spent a year on paid leave.

93.    The City of Stamford failed to obtain a written agreement from Vecchia that he would cease harassing Murphy.

94.    The City of Stamford failed to monitor Vecchia's behavior.

95.    The City of Stamford failed to investigate Vecchia's conduct in November 2000.

96.    The City of Stamford waited for the police to arrest Vecchia before taking any action.

97.    The City of Stamford failed to complete its investigation of Vecchia's harassment of Murphy in a timely manner.

98.    The City of Stamford neglected their responsibility and "deferred" their investigation until there was an outcome in Vecchia's criminal case.

99. Vecchia permitted a pattern, practice, and course of conduct that violated the City of Stamford's Sexual Harassment Polices and Procedures.

100. Vecchia tolerated a pattern, practice, and course of conduct that violated the City of Stamford's Sexual Harassment Policies and Procedures.

101. Vecchia engaged in a pattern, practice, and course of conduct that violated the City of Stamford's Sexual Harassment Policies and Procedures.

102. Vecchia failed to refrain from violating the City of Stamford's Sexual Harassment Policies and Procedures.

103. Vecchia failed to enforce the City of Stamford's Sexual Harassment Polices and Procedures.

104. The City of Stamford has a "Zero Tolerance" policy.

105. Vecchia was aware his conduct violated the Policy and Procedure of the City of Stamford.

106. The City of Stamford and Vecchia entered into an agreement that stated:

    a. Vecchia would be able to remain at work only if he discontinued the harassment of Murphy.

    b. Sought psychological treatment.

    c. Reported on the progess of his psychological treatment.

107. Vecchia made unwelcomed advances at Murphy while working for the City of Stamford.

108. Vecchia made unwelcomed advances at Murphy after work hours.

18

109.    Vecchia left a bullet on Murphy's deck at home.

110.    Vecchia left balloons on Murphy's car while it was parked at her home.

111.    Vecchia sent Murphy numerous articles and packages through interoffice mail.

PLAINTIFF,
BARBARA MURPHY

BY:     _____
Elisabeth Seieroe Maurer (ct11445)
The Law Offices of Elisabeth Seieroe Maurer, PC
871 Ethan Allen Hwy., Suite 202
Ridgefield, CT 06877
Phone (203) 438-1388
Fax (203) 431-0357
email: esmaurer@snet.net

19

# EXHIBIT 1

CONFIDENTIAL




Janet Morann

JANET MORANN  Jan, Jem 76. Discus Throwers have me
Known for breakfast with M.F., always remember the track me-
bus trips. Be alive with Pleasure. Be good P.B. Company
GLORIA MORGAN  A student that didn't like school too mu
admired her men and liked to party on weekends
RUDY F. MOSSA  Rude. Good times     MCTC. Saturday n
Spirit Shop! Never forget Summer '75. Quad. basketball ga
"Cruisin"     7th per. deli     Dreams TR6, MG, UCLA fore
Admires E.J., future plans include college
LISA ANN MOWNN  Come live with me and be my love, and
some new pleasures prove of golden sands and crystal brook
silken lines; silver hooks. John Dunne
BILL MULLIGAN  Loves skiing and curling; will never forg
and cruising through Rev. Woods during study. Enjoyed partyi
Jive Jr., Goofio, Bababou, Chuckles, and B.O.N.G.; loved keg p
was 4 yrs. of pure insanity!
DIANE MURPHY  Murf "Our Gang". Libs laughs. Vodkie
punch, R.Race and "Jeep". "Touch the Earth, take care of it an
take care of you."
KEVIN MURPHY  "Murf"     Hey Dul    see you in fi
Partin     "as it were", see, nice size 18's     Don't kick me o
Canary, I'll be good!"    , let's get to class     Elwood! adi...
ARETHA NEWTON  Virgo. sign of a woman. Loves to talk
hives to go to NEW HAVEN — enjoys partying and dancing. .
her man (D.B.) and her sister (K.N.). Will always remember 7
April, C.B.


Diane Morrell


Gloria Morgan


Rudy Mossa



Lisa Mownn



William Mulligan


Barbara Murphy









# EXHIBIT 2

Barbara

This is all I have, it was thrown in the
trash at my home and in my panic I
forgot it.

Anything else missing was thrown out
elsewhere and I cannot recall.

Please use enclosed money to purchase any
items you are missing. If more is
needed I will reimburse you.

I do not know why I did this, and
regret the pain it has brought your family.

My life is in your hands. Please give me
time, a chance to solve my problems and
redeem my life.

Fred

# EXHIBIT 3

DEPARTMENT OF PUBLIC SAFETY
DIVISION OF STATE POLICE

Date: 9/11/99

Time Started: 1810

Time Ended: 1840

938-2527

STATEMENT OF: Mary Vecchia

date of birth: 1/23/59

600 Redding Rd. , town/city of Redding Ct

...owing statement, without fear, threat, or promise, knowing that it may be used against me in court. I have been advised of my rig...
...that I have a right to consult with an attorney prior to any questioning and to have the attorney present during the questioning; th...
...the police, I can terminate the questioning at any time; that if I cannot afford an attorney, one will be appointed for me by the co...
...the above rights and, at this time, waive them. I have also been advised that any statement(s) made herein which I do not believe t...
...ten statement is intended to mislead a public servant in the performance of his/her official function, is a crime under C.G.S.Sec...

I reside at 600 Redding Rd with my two children, David age 13 + Helen age 10. I am in the process of divorcing my husband of 14 yrs, David Vecchia. I have been separated from David since Sept. 14, 1998. David + I currently share equal custody of the children although I have a motion pending at Danbury superior court for full custody of the child... After David and I separated, the children and I moved into my parents home at 614 Redding Rd (approx Nov. 1998). At this time I began receiving numerous phone calls from David at this residence (938-... These calls soon became overbearing so I began documenting them. David placed hundreds of calls to the residence between Nov 1998 and A... 99. I have personally told David to stop calling me as did my father on several occasions.

In Aug 1999 I moved back to my residence at 600 Redding (The children and I were permitted residence by the court). David began calling me at this residence. I then changed the phone number and David again started to call my father's home in an attempt to contact me and/or the children. David would place these calls from his mothers home - Bethel Ct, his work - Stamford Ct, from payphones in various areas of Redding Ct and from areas "out side of area or unavaila...

...d my signature to this statement. I acknowledge that I have read it and/or have had it read to me and it is true to the best of ...
...and belief.

CONFIDENTIAL

Signature: x Mary Vecchia

Signature: _____

...appeared the signer of the foregoing statement and made oath before me to the truth of the matters contained therein.

...endorse here:

STATE OF CONNECTICUT
DEPARTMENT OF PUBLIC SAFETY
DIVISION OF STATE POLICE

Case Number A77-332007

STATEMENT OF Mary Vecchia _____ (Cont.)

I feel this as I had acquired caller I.D.

In July 1999 David began sending me and the children letters. Since July 15, 1999 David has sent us letters daily. These letters in total approx 70.

The content of the letters addressed to the children seldom vary. They consist primarily of the detailed events of David's day (from breakfast to business dealings). The letters have become very annoying to the children and they no longer want to read them. The children have become very upset with the letters and feel that "they are weird".

The content of the letters sent to me consists of pleads of Reconciliation & resolution. A couple of the letters have quoted scriptures from the Bible. The letters have become very disturbing to me and I feel that David may "snap" at some point. The letters represent the communication David has had with me in our 14 yrs of marriage. Also, on several occasions, I have noticed that David has followed me and the children to various places throughout Redding, Ridgefield and Danbury, on approx 10 diffent occasions David has left gifts for me or the children. I have become very alarmed at David's actions and fear for my safety and the wellbeing of the children, David continues to write that he will see us at many locations (community events, school & church). We now fear going to these places. I want David to stop harassing us and to leave us alone. I have requested that he only contact us through our attorneys.

my signature to this statement, I acknowledge that I have read it and/or have had it read to me and it is true to the best of my and belief.

Signature: Mary Vecchia

appeared the signer of the foregoing statement and made oath before me to the truth of the matters contained therein.
endorse here: _____

# EXHIBIT 4

EST WARRANT APPLICATION

: Rev. 9-98
54-2a, Pr. Bk. Sec. 36-1, 36-2, 36-3

STATE OF CONNECTICUT
SUPERIOR COURT

| FOR COURT USE ONLY |
| --- |
| Supporting Affidavits Sealed |
| ☐ YES        ☐ NO |

| ND RESIDENCE (Town) OF ACCUSED | COURT TO BE HELD AT (Town) | G.A. NO. |
| --- | --- | --- |
| d Vecchia, 5 Ridgedale Road, Bethel, Ct. w/m, 12/30/46 | Stamford | 1 |

## APPLICATION FOR ARREST WARRANT

Judge of the Superior Court

ndersigned hereby applies for a warrant for the arrest of the above-named accused on the basis of the facts set
the...

ffidavit below...    ☐ affidavit(s) attached.

| AND TURE | DATE 11/29/00 | SIGNED (Prosecutorial Official) |
| --- | --- | --- |

## AFFIDAVIT

pg. 1 of 12

ndersigned, being duly sworn, deposes and says:

That the Affiant, Police Officer Carl Strate is a regular member of the Stamford Police Dept., having 13 ½
ears experience as a Law Enforcement Officer, which have resulted in arrests and convictions for
iolations of the C.G.S. That The Affiant is currently assigned to the Bureau of Criminal Investigations
nit, and has personal knowledge of the facts and circumstances hereinafter related as the result of his own
nvestigative efforts, and those of other Police Officers.

That on Wednesday, 10/11/00, at 4 :50pm., Barbara Murphy came into Police H.Q. to see This Affiant, as
he had contacted me earlier in the day, requesting an interview regarding an ongoing problem. That upon
rriving, Murphy stated the following: That she works for the City of Stamford as an Administrative
ssistant to The Chief of The Stamford Fire Dept. That prior to that, she worked in The Payroll Dept. at
he Government Center. That while working at that location, Murphy met a man named David Vecchia, as
e was the Purchasing Agent for The City of Stamford. That they were only acquaintances through work
nd nothing more. That Murphy stated, Vecchia was stalking her, and has been for the past several years.

. while employed at The Government Center, Murphy reported Vecchia's harassing behavior to both
red Manfredonia and Bill Stover of The Human Resources Division. That both men called in Vecchia, who
dmitted his obsession with Murphy, but, promised to stop and seek counseling. That Murphy was
epresented by her attorney, Ben Fraser, and Vecchia represented by his sister, who was an attorney in
ashington, D.C. That Vecchia also admitted to breaking into Murphy's vehicle at her residence in
orwalk, Ct. in March of 1998. That Murphy stated, Vecchia started stalking her near the end of 1997.

hat on Thursday, 10/12/00, at 11:00am., This Affiant responded to The Human Resources Division of The
ity of Stamford, at 888 Washington Blvd., 9th floor. That upon arriving, This Affiant spoke to both Bill

REST WARRANT APPLICATION
-54 Rev. 9-98                                    STATE OF CONNECTICUT
§ 54-2a, Pr. Bk. Sec. 36-1, 36-2, 36-3              SUPERIOR COURT

FOR COURT USE ONLY
Supporting Affidavits Sealed
☐ YES    ☐ NO

AND RESIDENCE *(Town)* OF ACCUSED
rid Vecchia, 5 Ridgedale Road, Bethel, Ct. w/m, 12/30/46

COURT TO BE HELD AT *(Town)*
Stamford

G.A. NO.
1

### APPLICATION FOR ARREST WARRANT

A Judge of the Superior Court

undersigned hereby applies for a warrant for the arrest of the above-named accused on the basis of the facts set
in the...

affidavit below...    ☐ affidavit(s) attached.                    pg. 2 of 12

E AND | DATE | SIGNED *(Prosecutorial Official)*
URE | 11/29/00 |

### AFFIDAVIT

undersigned, being duly sworn, deposes and says:
Stover and Fred Manfredonia in a private conference room, at which time they stated the following: That
they were aware of Barbara Murphy's allegations, that she had reported the alleged stalking appx. 2 years
ago. That at that time, she had just left the Payroll Division and transferred to The Fire Dept. That Murphy
was represented by Ben Fraser, and that when they spoke to David Vecchia, he admitted to being attracted
to Murphy, that he had broke into her car and taken some of her things. That Vecchia told both Stover and
Manfredonia he would stop his pursuit of Murphy, and seek counseling, that he was fearful of losing his job,
having martial problems, but, trying to work them out. That Vecchia's sister, an attorney in Washington, DC
called after their conversation, and asked both men, to please not fire her brother, that he would get some
help. That This Affiant requested any official paperwork regarding this complaint, with both Stover and
Manfredonia stating, they only remembered taking notes. and would have to check the file, then get back to
This Affiant at a later time.

That on Friday, 10/13/00, at 7:26pm., This Affiant received the notes of Attorney Ben Fraser, who had
represented Barbara Murphy when she confronted David Vecchia RE: His inappropriate behavior towards
Murphy from 1997 to March of 1998, then again when she made a formal complaint with The Human
Resources Division of The City of Stamford. That these notes included a handwritten note written to
Murphy by David Vecchia, in late March of 1998, in which Vecchia admitted to breaking into her car, not
knowing why he did it, and asking her for time to solve his problems. That he enclosed $100.00 for
reimbursement for the items he was not able to return.

That these notes documented Murphy's contact with Fraser on 03/21/98, reporting her car having been
broken into the night before. That Murphy told Fraser at that time, she felt David Vecchia was responsible.
That these notes documented the correspondence between Fraser and Janet Vecchia. David's sister who is 

REST WARRANT APPLICATION
R-64  Rev. 9-88
. § 54-2a, Pr. Bk. Sec. 36-1, 36-2, 36-3

STATE OF CONNECTICUT
SUPERIOR COURT

| FOR COURT USE ONLY |
|---|
| Supporting Affidavits Sealed |
| ☐ YES    ☐ NO |

E AND RESIDENCE (Town) OF ACCUSED
id Vecchia, 5 Ridgedale Road, Bethel, Ct. w/m, 12/30/46

| COURT TO BE HELD AT (Town) | |
|---|---|
| Stamford | G.A. NO. |
| | 1 |

## APPLICATION FOR ARREST WARRANT

A Judge of the Superior Court

undersigned hereby applies for a warrant for.the arrest of the above-named accused on the basis of the facts set
n in the...

affidavit below...    ☐ affidavit(s) attached.

| TE AND | DATE | | SIGNED (Prosecutorial Official) |
|---|---|---|---|
| NATURE | 11/29/00 | | |

## AFFIDAVIT

pg. 3 of 12

undersigned, being duly sworn, deposes and says:
    an attorney in Washington DC. That an agreement was reached in late March of 1998 between all parties.
That the agreement required David Vecchia seeking immediate counseling, and the immediate and
permanent cessation of stalking, annoying, and frightening behavior towards Barbara Murphy. That
if Vecchia did this, Murphy would not take further action with The Police or City of Stamford. That
copies of reports from Vecchia's therapist would be required periodically to permit monitoring and
the taking of reasonable steps to ensure Murphy's safety. That these terms were firmed up and
accepted on March 26, 1998.

That these notes documented the resumption of hang up calls at Murphy's residence in Norwalk, Ct.,
in May of 1998, as well as other similar behavior that Vecchia had done.in the past. That this behavior
continued to September of 1998, at which time. the complaint was lodged with The City of Stamford.
That Fraser, along with Barbara Murphy. Bill Stover. and Fred Manfredonia all met on 09/21/00 to
discuss how the City would proceed against David Vecchia regarding his behavior. That a second meeting
was documented on 09/30/98. where Stover and Manfredonia told Murphy and Fraser they had spoken
to Vecchia on 09/25/98, at which time. he waived his right to counsel, and stated, he didn't want to further
humiliate himself. That Vecchia acknowledged his prior conduct towards Murphy, and the "deal" they had ·
made in the past regarding his getting help. That Stover and Manfredonia advised Vecchia not to have any
contact whatsoever with Murphy, and that they would put together a written agreement for execution by
David Vecchia.

That on Thursday, 10/26/00, at 3:50pm., Barbara Murphy came into Police H.Q. and gave This Affiant a
Written Voluntary Statement, describing the details of David Vecchia's behavior towards her. for the past.
three years. That Murphy stated the following: That beginning in 1997, David Vecchia, whom Murphy met

EST WARRANT APPLICATION

54 Rev. 9-98
g 54-2a, Pr. Bk. Sec. 36-1, 36-2, 36-3

STATE OF CONNECTICUT
SUPERIOR COURT

FOR COURT USE ONLY

Supporting Affidavits Sealed

☐ YES   ☐ NO

| AND RESIDENCE *(Town)* OF ACCUSED | COURT TO BE HELD AT *(Town)* | G.A. NO. |
|---|---|---|
| d Vecchia, 5 Ridgedale Road, Bethel, Ct. w/m, 12/30/46 | Stamford | 1 |

## APPLICATION FOR ARREST WARRANT

A Judge of the Superior Court

ndersigned hereby applies for a warrant for the arrest of the above-named accused on the basis of the facts set
in the...

affidavit below...   ☐ affidavit(s) attached.

| E AND | DATE | SIGNED *(Prosecutorial Official)* |
|---|---|---|
| ATURE | 11/24/00 | SCc |

## AFFIDAVIT

pg. 4 of 12

ndersigned, being duly sworn, deposes and says:

while working at The Government Center , began to follow her around, showing up at "Alive at Five", a
block party sponsored by The Downtown Special District, City sponsored softball games, road races, and
bars she would frequent, specifically "Brennan's" in Shippan. That he would send her favorite candy to her
place of employment, and when seeing her at Brennan's, he would try to buy her drinks, and then pay for
her tab. That he would stay at Brennan's the entire time she would be there, stare at her, call out her name,
then follow her out, at times, walking to her car and standing in front of it, not permitting her to leave. That
when Murphy would get home after seeing Vecchia out, she would receive numerous calls where the caller
would not speak. That when Murphy would awake the next day, there would be something left on her
lawn, balloons, ornaments, etc.

That Murphy stated, she reported this behavior to The Human Resources Division within The City of
Stamford in September of 1998, that a formal complaint was made against David Vecchia, with Murphy
presented by Ben Fraser. That this complaint proved her allegations to be true, with Vecchia agreeing to
get help and stop his pursuit of Murphy, thus, no Police action would be taken.

That Vecchia suspended his pursuit of Murphy, but, in early October of this year, Murphy saw Vecchia in
Tarantos, which is located on Glenbrook Road in Stamford, Ct. That Murphy was in Tarantos with a male
friend sitting at the bar, facing the door. That Murphy observed Vecchia walk in alone, at which time, both
parties had eye contact. That Vecchia immediately came to an abrupt stop, and just stared at Murphy. That
Vecchia then walked over to the bar, sat 5 stools away, order a drink, and continued to stare a Murphy. That
after appx. 10 minutes of this, Murphy told her male friend, that she couldn't stay there any longer, that
Vecchia now knew she came there, he was drinking, and was continuing to stare at her. That Murphy and

REST WARRANT APPLICATION
54  Rev. 9-98
g 54-2a, Pr. Bk. Sec. 36-1, 36-2, 36-3

STATE OF CONNECTICUT
SUPERIOR COURT

FOR COURT USE ONLY
Supporting Affidavits Sealed
☐ YES    ☐ NO

AND RESIDENCE (Town) OF ACCUSED
id Vecchia, 5 Ridgedale Road, Bethel, Ct. w/m, 12/20/46

COURT TO BE HELD AT (Town)
Stamford

G.A. NO.
1

## APPLICATION FOR ARREST WARRANT

A Judge of the Superior Court

undersigned hereby applies for a warrant for the arrest of the above-named accused on the basis of the facts set
in the...

affidavit below...    ☐ affidavit(s) attached.

| E AND ATURE | DATE 11/29/0- | SIGNED (Prosecutorial Official) |
|---|---|---|

### AFFIDAVIT                    pg. 5 of 12

undersigned, being duly sworn, deposes and says:

le friend left, with Vecchia watching her as she got up from the bar, and until she exited the premises. That
urphy could not be certain if Vecchia followed her there, or if he just saw her car outside, as he had never
en seen in Taranto's by Murphy or her male friend, prior to that evening. That Murphy had started to go to
rantos, as she was to afraid to frequent "Brennan's", as Vecchia was always there watching her in the past.
at when Murphy arrived home that night, she immediately shut the phone off, as in the past, whenever
cchia would see her out, he would continually call throughout the evening. That upon waking up the next
ming, Murphy checked her caller ID, which showed a call into her residence at 11:11pm. the night before.
t the caller ID showed the number 203-762-7694. That a check with SNET showed that number to be in the
ton/Georgetown area, and the phone to be a pay phone.That the phone was specifically on Old Ridgefield
d, in Wilton, CT., across from The Village Market. That this location, is just off of route 7 in Wilton, appx.
iles south of route 107, which leads to Redding, CT.   That David Vecchia lives in Redding, Ct., just past the
rgetown area. That Murphy felt Vecchia had made the call, as this was on his way home, and this was the
 he utilized in the past. That Vecchia would see Murphy out, call her on the way home, then when she
ke the next morning, there would be something left on her lawn. That the next morning after seeing Vecchia
getting the phone call, Murphy observed a plastic, green frog ornament, with red lips on her front lawn.
t Murphy became extremely upset, as she felt Vecchia was beginning his repeated patterns of before. That
phy then came forward and reported Vecchia's behavior to This Affiant.

That later that same week, in early October of 2000, within a few days, Murphy saw Vecchia in The
Government Center, on the 10th floor. That as Murphy was standing by The Finance area. Vecchia walked
by and saw her, at which time, he stopped and just stared at her. That Murphy became very nervous and
uncomfortable, and began to walk away. That Vecchia stood there and just watched her, never taking his
eyes off her. That Murphy had stayed away from The Government Center, Brennan's, and other places she

REST WARRANT APPLICATION                    STATE OF CONNECTICUT
-54  Rev. 9-93                                   SUPERIOR COURT
§ 54-2a, Pr. Bk. Sec. 36-1, 36-2, 36-3

FOR COURT USE ONLY
Supporting Affidavits Sealed
[ ] YES    [ ] NO

E AND RESIDENCE (Town) OF ACCUSED
rid Vecchia, 5 Ridegedale Road, Bethel, Ct. w/m, 12/20/46

COURT TO BE HELD AT (Town)
Stamford

G.A. NO.
1

APPLICATION FOR ARREST WARRANT

A Judge of the Superior Court

undersigned hereby applies for a warrant for the arrest of the above-named accused on the basis of the facts set
in the...

affidavit below...    [ ] affidavit(s) attached.

| TE AND | DATE | SIGNED (Prosecutorial Officer) |
| NATURE | 11/29/00 | |

AFFIDAVIT                    pg. 6 of 12

undersigned, being duly sworn, deposes and says:

would frequent, as she would try at all cost to avoid seeing Vecchia. That during the interview,
Murphy appeared nervous, anxious, and very concerned about this situation, as she had tried to
stop Vecchia's behavior by not getting him in trouble, but, now feels this is starting up all over
again. That Murphy stated, she cannot sleep at night, as Vecchia knows where she lives, knows her car
and knows her phone number. That Murphy stated, this situation is causing her to completely alter her
lifestyle.

. That a few days later, the first week of November, Murphy went to The Government Center, 4th floor,
as she was going to see a friend, Val Pankosky. That Murphy walked by the Conference room, with a
training class in session. That Murphy was to attend this class within a few days. That as Murphy walked
by, she saw David Vecchia sitting in the class, with Vecchia seeing Murphy walk by. That Murphy became
upset, as she felt Vecchia would follow her once more. That Murphy told Pankosky she had to leave, and as
egan to walk back down the hallway, Vecchia was outside the class, just standing in the hallway.
That Murphy had to walk by him to get to the elevator, with Vecchia watching her the entire time. That once
Murphy walked past Vecchia, he continued to watch her, then followed her to the elevator. That as Murphy
was waiting for the elevator by herself, with no one else around, Vecchia repeatedly walked back and forth
past her, always watching her. That Murphy became afraid to get on the elevator alone, as she was alarmed
at Vecchia's behavior, and thought, if he came near her or got on the elevator, she would scream. That when
the elevator arrived, Murphy got on, and as she was waiting for the door to close, Vecchia continued to walk
past the elevator, back and forth, just staring at her. That Murphy stated, she has stopped going everywhere,
she has stopped her life and now feels like she is in jail. That she can't sleep at night, hears constant noises,
is afraid to look outside, and it's making her crazy! That Murphy stated, she has even thought of purchasing
a handgun for protection, as she has come to The Police for help, and doesn't know what else to do!

REST WARRANT APPLICATION
.-84  Rev. 9-96
§ 54-2a, Pr. Bk. Sec. 36-1, 36-2, 36-3

STATE OF CONNECTICUT
SUPERIOR COURT

FOR COURT USE ONLY
Supporting Affidavits Sealed
☐ YES    ☒ NO

E AND RESIDENCE (Town) OF ACCUSED
rid Vecchia, 5 Ridgedale Road, Bethel, Ct. w/m, 12/30/46

COURT TO BE HELD AT (Town)
Stamford

G.A. NO.
1

APPLICATION FOR ARREST WARRANT

A Judge of the Superior Court

undersigned hereby applies for a warrant for the arrest of the above-named accused on the basis of the facts set
 in the...

affidavit below...    ☐ affidavit(s) attached.

| TE AND NATURE | DATE 11/24/60 | SIGNED (Prosecutorial Official) |
|---|---|---|

AFFIDAVIT                    pg. 7 of 12

undersigned, being duly sworn, deposes and says:

That on Friday, 11/03/00, at 10:51pm., This Affiant received a report from The Norwalk Police Dept.
wherein it stated the following: That on Friday, 11/03/00, at 2:00pm., Barbara Murphy observed a
bullet on her deck at her residence in Norwalk, Ct. That Murphy felt the bullet was left on her deck
by David Vecchia to scare her. That the bullet was a 380 cal. Copper jacketed type, and did not appear
to have been fired.

That on Saturday, 11/11/00, at 12:30pm., This Affiant spoke to Kris Seaborne, who stated the following:
That she had been friends with Barbara Murphy for the past 5 years. That there was a period 2-3 years
ago, when this guy named David Vecchia who works for The City of Stamford, would show up at
Brennan's, a bar they would frequent. That Vecchia would come to the bar alone, stand there, drink, and
just stare at Murphy. That when she would leave the bar, Vecchia would follow her out, and after this
happening several times, Murphy started to have people walk her out to her car. That everyone that
frequented the bar was aware of this and concerned for Murphy's safety. That on one occasion, after
Murphy was walked out to her car, she came back in very upset, as Vecchia had stood in front of her
car and refused to move or left Murphy leave. That Vecchia would not speak to Murphy, but, just
stare and always be there. That sometimes he would say hi, or try to engage Murphy in conversation,
but, that she would always try to avoid him. That once, Vecchia paid for Murphy's tab at the bar, and
she told him never to do it again. That Vecchia would try to pay for their food and drinks, but, they
always refused his offers. That Seaborne stated, Vecchia was asked to leave the bar a few times because
of his strange behavior towards Murphy, and remembered that once there might of been a scuffle over
him leaving. That Murphy became so concerned about Vecchia showing up at Brennan's, that she
would have Seaborne enter the bar before she did, to check if Vecchia was there. That Seaborne

REST WARRANT APPLICATION
54 Rev. 5-98
§ 54-2a, Pr.-Bk. Sec. 36-1, 36-2, 36-3

STATE OF CONNECTICUT
SUPERIOR COURT

FOR COURT USE ONLY
Supporting Affidavits Sealed
☐ YES    ☐ NO

AND RESIDENCE (Town) OF ACCUSED
d Vecchia, 5 Ridgedale Road, Bethel, Ct. w/m, 12/30/46

COURT TO BE HELD AT (Town)
Stamford

G.A. NO.
1

### APPLICATION FOR ARREST WARRANT

A Judge of the Superior Court

undersigned hereby applies for a warrant for the arrest of the above-named accused on the basis of the facts set in the...

affidavit below...    ☐ affidavit(s) attached.

| E AND ATURE | DATE 11/29/00 | SIGNED (Prosecutorial Official) |

### AFFIDAVIT                    pg. 8 of 12

undersigned, being duly sworn, deposes and says:
remembers Vecchia showing up at "Alive at Five", that he would show up alone, hang around, never coming too close, but, always being there. That Murphy has completely changed her lifestyle because of Vecchia following her, and is now extremely nervous.

That on Saturday, 11/18/00, at 5:45pm., This Affiant responded to The Redding Police Dept., and spoke to Corporal Briggs. That Briggs was familiar with David Vecchia, as he had previously lived at 600 Redding Road with his wife, Mary and two children. That Vecchia no longer was at that residence, as he was in the process of a divorce, that since his departure, there had been several complaints of criminal mischief, harassing phone calls, and unusual behavior at 600 Redding Road, with Mary Vecchia being the complainant.

That Briggs gave This Affiant a copy of a Redding Police Report, dated 09/11/99, in which Mary Vecchia complained of receiving hundreds of annoying phone calls to her father's residence, at 614 Redding Road, and her residence 600 Redding Road. That these calls were made from David Vecchia's mother's house in Bethel, Ct., The City of Stamford, (David Vecchia's place of employment) and pay phones throughout the Redding area. That these calls were made between 01/99-09/99. That on some days, Mary Vecchia would receive as many as 38 calls, all of which were documented. That from 07/14/99-09/10/99, Mary Vecchia and er children received appx. 75 letters from David Vecchia. That after conferring with Investigator John Mahoney of GA-3, The Redding Police Dept. issued only a warning to Vecchia regarding his behavior. That the case was closed on 10/07/00.

That This Affiant and Corporal Briggs responded to 600 Redding Road in Redding, Ct., as Mary Vecchia had requested to speak to This Affiant about her husband, David. That upon arriving, Mary Vecchia told

ARREST WARRANT APPLICATION
CR-64 Rev. 9-98
.S. § 54-2a, Pr. Bk. Sec. 36-1, 36-2, 36-3

STATE OF CONNECTICUT
SUPERIOR COURT

FOR COURT USE ONLY
Supporting Affidavits Sealed
☐ YES    ☐ NO

ME AND RESIDENCE (Town) OF ACCUSED
vid Vecchia, 5 Ridgedale Road, Bethel, Ct. w/m, 12/30/46

COURT TO BE HELD AT (Town)
Stamford

G.A. NO.
1

### APPLICATION FOR ARREST WARRANT

): A Judge of the Superior Court

e undersigned hereby applies for a warrant for the arrest of the above-named accused on the basis of the facts set
th in the...

☐ affidavit below...    ☐ affidavit(s) attached.

ATE AND | DATE | SIGNED (Prosecutorial Officer)
GNATURE | 11/29/00 |

### AFFIDAVIT

pg. 9 of 12

.dersigned, being duly sworn, deposes and says:
This Affiant that she knew about the girl David was stalking in Stamford, that her name was Barbara
Murphy. That Mary Vecchia stated the following: That in June of 1997, her husband began to act strangely,
coming and going at all hours of the night, reading in the dark utilizing a flashlight for light, walking
in the garage in the dark, and acting quite odd. That in the fall of 1997, Mary found a copy of a page out of
a yearbook, in David's briefcase. That there were a total of 12 photo's on the page, which was numbered
"218 Seniors". That on this page, there were 8 females and 4 males. That Mary didn't quite know what this
photo meant, but, made a copy of it for herself and returned the original copy to David's briefcase. That
Mary Vecchia responded to The Ferguson Library in Stamford, Ct., and learned that this page was from the
1976 Stamford High School yearbook.

. That David Vecchia's behavior continued to be quite odd, coming home intoxicated, sometimes as late as
5:00am. That Mary decided to have David followed by a Private Investigator, as she felt he might be having
an affair. That on 03/20/98, David was followed by an Investigator from K. Parker Mayo Inc. . That the
.vestigator reported following David from the Government Center in Stamford, Ct., to a bar called
"Brennan's", which was located on Iroquois Ave., a one way dead end street. That while watching David
Vecchia inside the bar, two women arrived and entered the bar, but, came out shortly thereafter, with one
of the women stating to the other, "The psycho, Dave, was in there, at the bar, and I told him he was
psycho too, let's get out of here"!

That the next day, 03/21/98, there was a message on Mary Vecchia's answering machine, with the
caller being a woman, identifying herself as Barbara Murphy, and asking David to return her briefcase
and the stuff he took out of her car. That Mary Vecchia then realized Murphy's photo was on the copy of
the page out of the Stamford High School yearbook that she had found in David's briefcase. That Mary

RREST WARRANT APPLICATION

R-64  Rev. 9-98
S. § 54-2a, Pr. Bk. Sec. 36-1, 36-2, 36-3

STATE OF CONNECTICUT
SUPERIOR COURT

| | FOR COURT USE ONLY |
|---|---|
| | Supporting Affidavits Sealed |
| | ☐ YES  ☐ NO |

ME AND RESIDENCE (Town) OF ACCUSED

vid Vecchia, 5 Ridgedale Road, Bethel, Ct. w/m, 12/30/46

| COURT TO BE HELD AT (Town) | G.A. NO. |
|---|---|
| Stamford | 1 |

## APPLICATION FOR ARREST WARRANT

: A Judge of the Superior Court

e undersigned hereby applies for a warrant for the arrest of the above-named accused on the basis of the facts set
h in the...

affidavit below...     ☐  affidavit(s) attached.

| ATE AND | DATE | | SIGNED (Prosecutorial Official) |
|---|---|---|---|
| GNATURE | 11/2-9/00 | | |

AFFIDAVIT                    pg. 10 of 12

undersigned, being duly sworn, deposes and says:

then realized David was stalking her also. That when Mary approached David and told him of the message
he became very upset, and stated, he was going to get arrested. That Mary remembers some of the things
that David took out of Murphy's car were in their trash bin. That when Mary asked David about his behavior
he replied, he thought Murphy liked him, as she was nice to him. That he had also put balloons on her car
for her 40th birthday.

. That Mary Vecchia produced a copy of SNET phone records showing calls to Murphy's residence, 203-
866-5207, from her phone line, 203-938-2409. That on 03/21/98, 2 calls were made to Murphy's residence,
one at 6:32pm., and the other at 9:40pm. That on 03/22/98, there was another call made to Murphy's
residence at 4:43pm.

. That Mary Vecchia knew about Janet Vecchia getting involved in late March of 1998, that David was to get
.erapy, but, only attended 2-3 sessions, then felt that he wouldn't be arrested, so stopped. That David
admitted his attraction and obsession for Murphy, but, became very depressed when he learned that Murphy
did not feel the same.

That Mary Vecchia showed This Affiant a book titled, "Stopping A Stalker", which was written by a
Chicago Police Officer. That Mary stated, she found this book in David's briefcase as well as 50-60
pages of research on Stalking that David had obtained through the Internet. That Mary became very
concerned at that point, and stated, David was in Vietnam and in "Special Operations", specializing
in Espionage.

REST WARRANT APPLICATION
-84 Rev. 9-98
§ 54-2a, Pr. Bk. Sec. 36-1, 36-2, 36-3

STATE OF CONNECTICUT
SUPERIOR COURT

·FOR COURT USE ONLY·
Supporting Affidavits Sealed
☐ YES    ☐ NO

AND RESIDENCE *(Town)* OF ACCUSED
vid Vecchia, 5 Ridgedale Road, Bethel, Ct. w/m, 12/30/46

COURT TO BE HELD AT *(Town)*
Stamford

G.A. NO.
1

## APPLICATION FOR ARREST WARRANT

A Judge of the Superior Court

undersigned hereby applies for a warrant for the arrest of the above-named accused on the basis of the facts set
in the...

affidavit below...    ☐ affidavit(s) attached.

| E AND<br>NATURE | DATE | SIGNED *(Prosecutorial Official)* |
|---|---|---|
| | 11/29/00 | |

AFFIDAVIT              pg. 11 of 12

ersigned, being duly sworn, deposes and says:
That Mary Vecchia was unsure if her husband had any weapons, and upon her request, This Affiant
and Corporal Briggs conducted a search of specific area's where David Vecchia still had some personal
belongings inside 600 Redding Road. That at Mary Vecchia's request, A Consent To Search Premises
Without A Search Warrant form was completed. That the only two area's checked were the master bedroom
with negative results, and the garage area, with Corporal Briggs locating a 762-51, military issued live round
in a coffee can, which was in an area where David Vecchia had his personal belongings. That this type of
ammunition can be utilized in a weapon such as a AK-47.

That Mary Vecchia spoke about her problems with David in the past three years, and felt his compulsive,
relentless, and unpredictable behavior was similar towards her as it was with Murphy. That he was calling
her, leaving things at her house, sending letters, and having strange occurrences at her home just like
Murphy. That she feels her house and phone lines are bugged, as David knows where she is going and
what she will do, even before she does it. That she and her children are extremely fearful of her husband,

for a period, were all sleeping together in the same room with the door locked out of fear for their
safety.

That Mary Vecchia stated, David was allowed "supervised" visits with the children, however, that was
stopped in May of 2000, as Patricia Grunert, the children's therapist advised the court that David Vecchia
should not be allowed near his children at all. That since that time, David has been very angry and
started to frequent the area of Grunert's residence, watching her from the street. That Mary Vecchia told
This Affiant that the children are petrified of their father, don't want anything to do with him, and are both
n on-going counseling, as well as herself. That Mary Vecchia told This Affiant and Corporal Briggs that
she fears for the safety of herself, her children, the therapist, and Barbara Murphy.

AND    DATE                              SIGNED *(Affiant)*

‑54 Rev. 9-98
§ 54-2a, Pr. Bk. Sec. 36-1, 36-2, 36-3

STATE OF CONNECTICUT
SUPERIOR COURT

FOR COURT USE ONLY
Requiring Affidavit Sealed
☐ YES  ☐ NO

| AND RESIDENCE (Town) OF ACCUSED | COURT TO BE HELD AT (Town) | G.A. NO. |
|---|---|---|
| id Vecchia, 5 Ridgedale Road, Bethel, Ct. w/m, 12/30/46 | Stamford | 1 |

## APPLICATION FOR ARREST WARRANT

A Judge of the Superior Court

undersigned hereby applies for a warrant for the arrest of the above-named accused on the basis of the facts set
in the...

affidavit below...    ☐ affidavit(s) attached.

| TE AND NATURE | DATE 11/29/06 | SIGNED (Prosecutorial Official) _____ |
|---|---|---|

### AFFIDAVIT                    pg. 12 of 12

undersigned, being duly sworn, deposes and says:

That The Affiant, based on his training and experience and knowledge of the C.G.S. therefore
believes that David Vecchia went to extreme measures to learn about the art of Stalking through
the Internet, as well as the book titled, "Stopping A Stalker", then acted out his learning's for the
past three years towards the victim, Barbara Murphy. That The Affiant therefore believes that
probable cause exists in the after mentioned application and request that a warrant be issued for
the arrest of David Vecchia, w/m, 12/30/46, of 5 Ridgedale Road in Bethel, Ct. That This Affiant
will appear in court if necessary.

| AND TURE | DATE 11/28/00 | SIGNED (Affiant) _____ FF 9588 |
|---|---|---|
| RAT | SUBSCRIBED AND SWORN TO BEFORE ME ON (Date) 11/28/00 | SIGNED (Judge, Clerk, Comm. Sup. Ct., Notary Pub.) _____ |

### FINDING

oregoing Application for an arrest warrant, and affidavit(s) attached to said Application, having been submitted to and
ered by the undersigned, the undersigned finds from said affidavit(s) that there is probable cause to believe that an
has been committed and that the accused committed it and, therefore, that probable cause exists for the issuance of
nt for the arrest of the above-named accused.

| AND TURE | DATE 11/29/00 | SIGNED (Judge, Clerk, Comm. Sup. Ct., Notary Pub.) _____ |
|---|---|---|

(Page 1 of 2)

# EXHIBIT 5

CR 00 0135077                :        SUPERIOR COURT

STATE OF CONNECTICUT :                STAMFORD/NORWALK J.D.

VS                           :        AT STAMFORD

DAVID VECCHIA                :        JANUARY 23, 2002


B E F O R E:

        THE HONORABLE MARTIN NIGRO, JUDGE


A P P E A R A N C E S:
  :

        FOR THE STATE:

        PAUL FERENCEK, ESQ.

        STATES ATTORNEY


        FOR THE DEFENDANT:

        MARK KATZ, ESQ.


                    Reported by

                    Sharon Haas

Case 3:03-cv-00519-SRU    Document 43-2    Filed 04/12/2004    Page 43 of 56

1

MR. FERENCEK: Your honor, the next matter, David Vecchia, I believe it is 35 on the jury docket. We have a disposition, your honor.

MR. KATZ: May prior pleas and elections be withdrawn, your honor?

THE COURT: They may be withdrawn at the request of the defendant.

MR. FERENCEK: Filing a substitute information in docket 135077, you are charged with criminal trespassing in the first degree in violation of 53a-107, subsection one. How do you plead, guilty or not guilty?

THE DEFENDANT: Guilty.

MR. FERENCEK: In count number two, disorderly conduct, in violation of 53a-182, subsection two, how do you plead? Guilty or not guilty?

THE DEFENDANT: Guilty.

THE COURT: All right, before I accept these pleas I am going to ask you some questions to make sure you understand what rights you are giving up and obligations you are assuming.

Have you had enough time to talk this matter over with your lawyer?

THE DEFENDANT: Yes, your honor.

THE COURT: Did your discussion include your intention to plead guilty to the charges?

THE DEFENDANT: Yes, your honor.

THE COURT: And did your attorney go over with you the possible maximum sentence that might be imposed, the elements of the crime the state would have to prove beyond a reasonable doubt before you could be convicted of the charges?

THE DEFENDANT: Yes, your honor.

THE COURT: I am sure he did, but just for the record. The charge of criminal trespass in the first degree carries with it a maximum sentence of one year or two thousand dollar fine, or both. Before you could be convicted of that charge the state would have the prove the following elements beyond a reasonable doubt. First of all, you were the person that was involved.

Has this having been directed not to leave, refuse to leave? Is that the - -

MR. FERENCEK: It was an incident, Your honor, where the victim had indicated not to bother her at her home or at her car or at any other place. It was communicated

numerous times.    And there was a break in to her automobile.

THE COURT: Okay.    The state would have to prove that you were the person that was involved, knowing that you were directed not to appear or enter into the premises, and having no other right to enter into the premises you did in fact leave the premises after you had been personally communicated to you that you shouldn't be in there.

MR. KATZ: No, Your honor, he in fact entered her motor vehicle without her permission at her residence.    She was not home at the time, nor was she present.    The specific conduct was an entry into the motor vehicle without her permission.

THE COURT: Premises - -

MR. FERENCEK: We are also agreed that she had told him on numerous times not to be on the property via the home or car. It had been communicated to him.

MR. KATZ: Not by her, though.

MR. FERENCEK: By others.    It doesn't have to be by her.

THE COURT: It has to be knowing you are not licensed or privileged to enter the premises, and this is in this case a motor

4

vehicle.    You    entered    or    remained    in    the
building    after    you    were    told    to    leave    or
not    enter    personally    communicated    to    such
person    by    the    owner    of    the    premises    or
another person authorized to communicate.

MR. KATZ: Yes.    He - - yes, your honor.

THE    COURT:    All    right.    Then    the    charge
of    disorderly    conduct    carries    with    it    a
possible    maximum    sentence    of    three    months.
That    would    have    to    show    that    you    were
engaged    in    obstreperous,    loud    and    abusive
language involving other persons.

If    you    enter    pleas    of    guilty    you    are
giving    up    your    right    to    trial.    You    are
giving    up    your    right    to    maintain    your    plea
of    not    guilty    and    require    the    state    to
actually    prove    you    are    guilty    of    either
these    crimes,    which    I    assume    are    a
substitute    information,    or    of    the    original
charges if we had gone forward.

You    are    giving    up    your    right    to    cross
examine    witnesses    against    you    at    a    jury
trial or a court trial.    That would be your
election.    You    are    giving    up    your    right    to
call    witnesses    in    your    own    behalf    to
testify on your behalf.

You    don't    have    to    testify.    You    don't

5

have to call witnesses. You don't have to present any defenses. You don't have to do a thing at a trial except sit there with your arms crossed. It is up to the state to prove you are guilty and prove you are guilty beyond a reasonable doubt.

Do you understand that if I accept the pleas you are not going to have this trial? Do you understand that?

THE DEFENDANT: Yes.

THE COURT: I am going to ask the states attorney to describe what it is he claims he would present. I want you to listen to what he says because I am going to ask if these are the claims you are entering a plea of guilty to.

MR. FERENCEK: Your honor, regarding the criminal trespass in the first degree, the victim in the case is an individual by the name of Barbara Murphy. I believe the defendant met her at their workplace. Thereafter during evening hours he would bother her repeatedly. She and other individuals clearly indicated to the defendant on numerous times that he was to have no contact with her, not to bother her at her home, at her car or any other place.

6

And on or about March 20, 1998 Ms. Murphy noticed the following morning that her car had been broken into at her home. She had reason to believe it was the defendant, based upon these prior occasions. Thereafter the defendant did write her a letter apologizing for breaking into the car and admitting culpability with regard to that. He also took several personal items from the automobile.

Then on the disorderly conduct charge the relevant date there is October of 2000. The victim, Ms. Murphy, was at a local restaurant/bar in Stamford and at some point during that evening the defendant walked in and began staring her down. There had been many prior occasions when he had bothered her in that same fashion, and this conduct was perceived by her and her companion as being annoying and interfering. And she actually felt threatened by it as well, based upon these prior occasions. She filed a complaint with the police.

THE COURT: Are those the claims you are pleading guilty to?

MR. KATZ: Your honor, if I may clarify?

Mr. Vecchia admits that he knew that he had actual knowledge when he entered the motor vehicle that he had no right to do so. And that his conduct in that regard was proscribed by law. He admits that. He admits the conduct as charged that he was violating the law by entering that property and by entering that vehicle.

The problem he has is the timing, the sequence. He doesn't remember specifically what events transpired before or after that incident. He does acknowledge and agree that he had no right to enter her property or that vehicle.

THE COURT: All right. He may be admired admitting to conduct that could be considered a felony, but he is pleading to a misdemeanor.

MR. KATZ: That is correct.

MR. FERENCEK: If I could also add that he was originally charged with burglary in the third degree. In light of this plea bargain, the plea agreement that we both struck here, we are reducing it to a misdemeanor charge of criminal trespass.

Is there a disposition agreement since you referred to that?

MR. FERENCEK: Yes, your honor. The agreed disposition of a total effective sentence of one year suspended with a three year period of probation with the following special conditions.

Number one, counseling, psychiatric counseling and any type of substance abuse counseling deemed appropriate by the office of adult probation.

Number two, no contact of any sort with the victim, Barbara Murphy.

And also, number three, he is agreeing not to object to any kind of criminal restraining order that Ms. Murphy may see fit within the three year period to obtain against the defendant.

MR. KATZ: I think that Mr. Ferencek meant civil restraining order.

MR. FERENCEK: Civil restraining order.

THE COURT: Right. She has to establish grounds for any order.

Before your client enters his plea, counsel, is that your understanding of the disposition agreement?

MR. KATZ: Yes, your honor.

THE COURT: Before you entered your plea, did you understand that that was the

disposition agreement?

THE DEFENDANT: Yes, your honor.

THE COURT: Besides that understanding, did anyone make any other kind of promises or offer for you to induce you to plead guilty when you otherwise would not have? Is this the only agreement you have about this? The only offer that was made to get you - - is there some difficulty with the question?

THE DEFENDANT: No, your honor.

THE COURT: Well, what is the answer?

THE DEFENDANT: Could you rephrase the question again? I'm sorry.

THE COURT: Besides this understanding about the disposition agreement, did anybody make any other kind of offer or promise to you to induce you to plead guilty when you otherwise would not have?

THE DEFENDANT: No, your honor.

THE COURT: Are you making up your own mind in pleading guilty? Nobody is forcing you to do this?

THE DEFENDANT: That is correct, your honor.

THE COURT: All right. Is there any comment you wish to make on behalf of your

client?

MR. KATZ: Yes, Your honor, there is a brief comment that I do wish to make. And that is that Mr. Vecchia during these proceedings that resulted in the criminal charges brought against him was going through an extremely stressful period. During the period of this time he was separated from his wife and children. He was probably mistakenly of the belief that he and Barbara Murphy might have a relationship, a friendly relationship, which did not turn out to be the case.

He fully recognized and has always acknowledged that his conduct in 1998 was not only illegal but inappropriate. As to his conduct in the year 2000 however, it has always been his position that the incidents were more of coincidence, more of happenstance, but that he should have had the presence of mind to avoid any contact with the victim because of a potential for exactly what has happened under these circumstances. And he recognizes and accepts responsibility for those consequences. I just wish the court to be aware of that.

11

MR. FERENCEK: And I would simply add that based upon my conversations with the victim, there never was any kind of relationship between these two parties.

THE COURT: Well, that is in people's perceptions.

Is there anything you want to say before I impose the sentence?

THE DEFENDANT: No, your honor.

THE COURT: I will make a finding that you knowingly and voluntarily entered your plea of guilty. That you had the effective assistance of counsel. That if the evidence alluded to by the state could be introduced at trial there is a factual basis for a plea. And I will make a finding of guilty on each count.

On the charge of criminal trespass in the first degree I sentence you to the custody of the Commissioner of Corrections for a period of one year. Suspend the execution of the sentence.

What was the term of probation?

MR. FERENCEK: Three years.

THE COURT: Three years. On the charge of disorderly conduct I sentence you to the custody of the Commissioner of Corrections

12

for a period of three months. Suspend the execution of the sentence. And run that concurrent with the other sentence. The total effective sentence is one year suspended, three years probation.

I will adopt the special conditions of probation which the parties understood. And I won't re-enunciate them. They will be part of the disposition agreement.

You are going to have to make sure your client sees the Probation Office representative before he leaves.

MR. KATZ: Thank you, your honor.

MR. FERENCEK: Thank you, your honor.

\*\*\*\*\*\*\*\*\*\*\*\*

13

```
CR 00 0135077              :     SUPERIOR COURT

STATE OF CONNECTICUT :           STAMFORD/NORWALK J.D.

VS                         :     AT STAMFORD

DAVID VECCHIA             ' :     JANUARY 23, 2002
```

C E R T I F I C A T I O N

I  hereby  certify  the  foregoing  is  a  true  and accurate  transcript,  to  the  best  of  my  ability,  of the  proceedings  in  the  above-referenced  cause, heard before Judge Nigro.

Certified this 8th day of September, 2002.


_____

Sharon Haas, Court Monitor

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
-----------------------------------------------X
BARBARA E. MURPHY,              :        3:03 CV 00519 (MRK)
        Plaintiff,              :
                                :
        v.                      :        CERTIFICATE OF SERVICE
                                :
THE CITY OF STAMFORD and        :
DAVID VECCHIA,                  :        October _____, 2003
        Defendants.             :
-----------------------------------------------X
```

I hereby certify that a copy of the foregoing Plaintiff's Request for

Admissions has been sent via first-class mail, postage prepaid, on this _____ day

of October, 2003, to the following counsel and pro se parties of record:

James V. Minor                          David Vecchia
Assistant Corporation Counsel           PO Box 159
888 Washington Boulevard, Box 10152     West Redding, CT 06896
Stamford, CT 06904-2152


Elisabeth Seieroe Maurer