**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

-------------------------------------------------X
**BARBARA E. MURPHY,**          :          **DN 3:03 CV 00519 (MRK)**
    **Plaintiff,**          :
                       :
        **v.**          :
**THE CITY OF STAMFORD and**          :
**DAVID VECCHIA,**          :          **March 31, 2005**
    **Defendants.**          :
-------------------------------------------------X

### DEFENDANT CITY OF STAMFORD'S MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

The defendant, City of Stamford, pursuant to FRCP 56, has moved for summary judgment for the following reasons:

1)     Plaintiff's hostile workplace claim under 42 USC 1983 is defeated as a matter of law since defendant Vecchia's actions were not so severe and pervasive enough to create a "hostile workplace".

2)     Plaintiff's hostile workplace claim under 42 USC 1983, assuming it exists, is defeated as a matter of law by the defendant City of Stamford's prompt and effective response to the plaintiff's complaint by obtaining an agreement that the co-worker cease such actions in 1998, which was effective for over two years, and

upon plaintiff's complaint of resumption of stalking in 2000, his

arrest, suspension and termination.

3) Plaintiff fails to allege or supply evidence to support a cause of

action against the City of Stamford for sexual harassment based

upon 42 USC 1983, because Plaintiff fails to prove, as a matter of

law, that the City of Stamford has a custom or policy of tolerating

co-worker sexual harassment by off-duty, off-site conduct.

4) Plaintiff fails to provide evidence that the City intentionally

discriminated against plaintiff or that plaintiff was treated

differently from others similarly situated as required for her equal

protection claim.

5) Plaintiff's state claims are defeated as a matter of law because of

statute of limitations, failure to exhaust her union grievance

procedure, and governmental immunity.

6) Plaintiff has no 1983 claim under denial of equal protection since

she suffered no loss of employment or benefits of employment,

compared to the stalker who was arrested, suspended and fired.

7) Plaintiff's 13th count (§ 46a-60, CGS) fails because of failure to

sue within 90 days of the release letter.

Attached hereto are the following to support this Memo: Statement of Facts not in dispute pursuant to Rule 56 (a) (1), with Exhibits, Affidavits and depositions excerpts.

## I.  NATURE OF PROCEEDINGS

Plaintiff filed this complaint in March, 2003 against the City of Stamford and her co-worker, Mr. Vecchia, alleging a violation of 42 USC 1983 for failure to prevent defendant David Vecchia, from harassing Ms. Murphy in 1998 and again in 2000 (count 3), violation of the state human rights statute, Sec. 46a-40, CGS (count 13), as well as various common law causes of action (counts 4, 5 and 6 allege negligent supervision or negligent retention; count 8, breach of contract; count 11, intentional and count 12 negligent infliction of emotional distress).

The parties were allowed to file dispositive motions by April 1, 2005.

## II. FACTS

### a) Overview

Plaintiff complained about a co-worker harassing and stalking her in off-duty places in September 1998. After Personnel met with her and her private attorney, and with the co-worker, Mr. Vecchia, Mr. Vecchia agreed to a "clear directive" in October 1998 that he cease harassing plaintiff in and out of work and that he get

counseling. If he violated this agreement he could be disciplined, up to and including termination.  Plaintiff did not complain for two years about Mr. Vecchia.

Plaintiff went to the Stamford police department in <u>October 2000</u>, two years after Mr. Vecchia stopped harassing her, because she felt he resumed his harassment. Plaintiff's arrest warrant affidavit, dated October 26, 2000 (Ex A), relates the history of Mr. Vecchia's harassment. Detective Strate investigated her complaint thoroughly, and added new information from Mr. Vecchia's wife (who was suing him for divorce) and other sources. Mr. Vecchia was arrested, pursuant to warrant, on November 30, 2000. He was placed on administrative leave the next day.  In January and February 2001, Mr. Vecchia through his criminal attorney denied that he did anything wrong after the 1998 agreement, and he had only "chance meetings" in 2000.

In January 2002, Mr. Vecchia pled guilty to charges reduced from stalking, to include a misdemeanor of criminal trespassing (from breaking into plaintiff's car in March 1998), and disorderly conduct (for the Tarantos restaurant encounter with plaintiff in October 2000). Mr. Vecchia was terminated after a hearing. He filed a union grievance, which was denied by the Board of Mediation and Arbitration.

The Plaintiff filed an administrative complaint in September 2001, with CHRO alleging the same claims as in this lawsuit, which was dismissed. She received a

"right to sue" letter from CHRO and EEOC in March and April 2002, giving her 90 days to sue, which 90 days expired in July 2002. She filed this complaint in March 2003. She sues only the City of Stamford (and not city officials) and Mr. Vecchia.

### b) plaintiff's first formal complaint in 1988 and the City's response

Plaintiff complained orally in September 1998 to Human Resources about Mr. Vecchia. SOF 14-16.  Plaintiff stated that she didn't want Mr. Vecchia to be 'hurt' (fired or arrested), but she wanted him to leave her alone and to get counseling. SOF 17-18. Mr. Vecchia agreed to this and she was happy with the agreement. SOF 18, 20.

When plaintiff's immediate boss at the Fire Department (Asst Chief Peter Brown) learned that Mr. Vecchia was a problem, which was after he learned that Mr. Vecchia broke into plaintiff's car in March 1998 after a night of drinking at a bar, he instructed the dispatcher who controlled entry to the third floor to prevent Mr. Vecchia entry to the third floor of Fire Department HQ (where Ms. Murphy, the administrative assistant, worked). Ass't Chief Brown altered Plaintiff's duties so plaintiff did not have to go to Government center (a separate building blocks away) where Mr. Vecchia worked. Plaintiff took time off to see a psychiatrist. SOF 59.

After Mr. Vecchia was warned by a "clear directive" in October 1998, to leave plaintiff alone in September 1998, Mr. Vecchia left her alone for over two years.SOF 25, 26, 42.

### c) Plaintiff's complaint in 2000 and the City's response

In October 2002, more than two years after her September 1998 complaint, Plaintiff felt Mr. Vecchia violated his promise to leave her alone. She went to the police because she felt Mr. Vecchia resumed his harassment. She was hoping the criminal process would order Mr. Vecchia to leave her alone. SOF 27; Ex. A, arrest warrant affidavit 10/26/00 p.6, last paragraph.

Mr. Vecchia was arrested on 11/30/00 after a thorough investigation and a warrant was signed and executed. He was suspended from his job in December, 2000.SOF 31.

Mr. Vecchia pled guilty to offenses in March 1998 (car break-in) and October 2000 Tarantos incident, and was fired. He pled guilty on January 23, 2002 and was fired on February 20, 2002, after a hearing attended by his attorney and union representatives. SOF 43, 45.

### d) plaintiff's CHRO complaint and release of jurisdiction

Plaintiff filed a complaint to the Connecticut Human Rights & Opportunities commission (CHRO) that contains the same allegations as this complaint in September 2001. SOF 39. It was dismissed by letter dated Feb. 11, 2002 (Ex.D) ("the record did not support your allegations that the respondent failed to take appropriate corrective action in response to your harassment complaints", p.1, middle paragraph). Ms. Murphy received a right to sue letter stating she had 90 days to sue from CHRO on 3/3/02 and EEOC on 4/24/02 (so her right to sue ended on 7/24/02). SOF 46, 47, Ex. E. She did not sue until March 2003.

If Plaintiff is allowed to by-pass the restrictions of Title VII and Sec. 46a-40, CGS, using 42 USC 1983, then the comprehensive nature of both statutes is defeated.

Plaintiff has not alleged any other cause of action, such as a claim for denial of her first amendment rights. She has not alleged nor has does she produce any evidence that the City of Stamford intentionally singled her out based upon her sex, and based upon a custom and policy, discriminated against her.

**e) plaintiff's lack of damages**

In order to sue for a denial of equal protection, plaintiff must show that she suffered some economic harm. She did not, although Mr. Vecchia was arrested, suspended and fired. In her deposition, the plaintiff clearly testified that she felt protected at work, which was the third floor of the Fire Department Headquarters. SOF 59.

The only time she met Mr. Vecchia after September 1998 was at Taranto's restaurant, and on two occasions when she was visiting Government center where Mr. Vecchia worked and they met by chance near the elevator.

### f) Plaintiff has no state causes of action

The state claims are also barred by the two year statute of limitations of two years- the complaint was filed on March 2003, and as of December 2000 Mr. Vecchia had been suspended from work, and remained so until his guilty plea and termination in February 2003. He had not been in the workplace since then. Plaintiff makes no claim that Mr. Vecchia harassed her after he was arrested. Also, as will be argued below, the City has governmental immunity as to discretionary decisions when making personnel decisions (such as whether to fire before or

after the guilty plea), and there is no jurisdiction to entertain negligence claims

arising out of workplace conditions by a union employee if no grievance was filed.

**III**. **ARGUMENT**

**a) Plaintiff's failure to allege a cause of action under 42 USC 1983 for hostile workplace**

Plaintiff can sue for hostile work environment  under section 1983 claim

only **if based on substantive rights distinct from Title VII.** Saulpaugh v. Monroe

Community Hosp, 4 F3d 134, 143 (2d Cir 1993) (quoting *Carrero v. New York City*

*Housing Auth.,* 890 F.2d 569, 575-76 (2d Cir.1989)).   A plaintiff cannot use Sec.

1983 to circumvent Title VII's limitations on damages and shorter statute of

limitations. Moche v. City Univ. of N.Y., 781 F Supp 160, 168 (EDNY 1992);  *see*

*also* Great Am. Fed. Sav. & Loan Ass'n v. Novotny, 442 U.S. 366, 375-76, 99

S.Ct. 2345, 60 L.Ed.2d 957 (1979).  "A plaintiff may assert a claim under Sec.

1983 if some law other than Title VII is the source of the right alleged to have

denied."  *Saulpaugh,* 4 F.3d at 143.

Therefore, the court should reject  Plaintiff's Sec. 1983 claim to the extent it

is based solely on a violation of Title VII. Any claim that the City failed to get a

written agreement, or monitor compliance, is solely based upon Title VII. Ericson

v. City of Meriden, 113 F Supp 2d 276, 290 (D Conn 2000) (secretary in male

highway department subject to sexual harassment, resulting in suspensions for

male co-workers, was transferred to a new job and then her job eliminated; all

1983 claims involving Title 7 claims were dismissed).

There is no question that Mr. Vecchia harassed and stalked Ms. Murphy,

since he pleaded guilty to the charges of the break-in of her car in March 1998 and

to disorderly conduct for the Tarantos staring incident in October 2000.

However reprehensible this conduct is, for which Mr. Vecchia paid a heavy

price, it is not "severe" and "pervasive" conduct <u>in the workplace</u>. It was criminal

conduct that was sporadic, and occurred off- duty and off-site. After Ms. Murphy's

complaint in September 1998, Mr. Vecchia suspended his harassment for two

years. SOF 25, 26. She stated this in the arrest warrant affidavit, SOF 28; Ex A..

She told the Superior Court judge who rejected Mr. Vecchia's motion for

accelerated rehabilitation the same thing. SOF 41, 42; Ex C.

A hostile workplace must be permeated with "discriminatory intimidation,

ridicule, and insult" that is "sufficiently severe or pervasive to alter the conditions of

the victim's employment and create an abusive working environment." <u>Harris v.</u>

<u>Forklift Systems, Inc.</u>, 510 US 17, 21 (1993); <u>Brown v. Town of Greenwich</u> 2004

WL 2106593 (D.Conn.2004) (summary judgment granted as plaintiff's complaints

about failure to promote and other personnel actions did not meet test of hostile

workplace); <u>Lyon v. Jones</u>, 2003 WL 1969321 (D Conn, 2003) (summary judgment against secretary who sued for failure to promote in 1991, 1998 and other personnel actions in 1999, as only four adverse actions over four years is not severe and pervasive to constitute a hostile workplace); <u>Cioffi v. Allen Products</u>, 2000 WL 33180448 (D Conn 2000) (summary judgment against plaintiff for failure to prove hostile workplace despite several incidents of sexual harassment by male co-employees, one of which resulted in discipline). [1] <u>Parisi v. Buffalo Municipal Housing Authority</u> 2003 WL 21382893 (W.D.N.Y. 2003) (Retired female employee sued municipal housing authority, alleging hostile work environment, and constructive discharge; summary judgment granted as alleged sexual harassment by supervisor was not sufficiently egregious to establish hostile work environment; employee failed to establish intolerable environment necessary to support constructive discharge claim).

   **In this case, the safest place for Ms. Murphy from Mr. Vecchia's harassment was her workplace**. Almost all of the incidents resulting in her

---

[1] To recover under her Title VII hostile work environment claim, Ms. Cioffi must "establish (1) that the 'workplace was permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions of [her] work environment, and (2) that a specific basis exists for imputing the conduct that created the hostile environment to the employer." ' *Richardson v. New York State Dep't of Correctional Serv., 180 F.3d 426, 436 (2d Cir.1999)*"

harassment were off-site and off-duty, usually late at night, after Mr. Vecchia had

been drinking at a local bar-restaurant, Brennan's.

Ms. Murphy's co-workers went out of their way to help her once she told

them that Mr. Vecchia was a problem. SOF 59, and affidavits of Ass't Chief Peter

Brown, par. 16 and Dep. Chief Robert Lehn, par. 13, 14.

There is no question that Mr. Vecchia stopped harassing the plaintiff for two

years, which shows that the "clear directive" of Mr. Stover to stop was effective.

SOF 20-25.

## b) Even if plaintiff has a cause of action for "hostile work environment," the City made an adequate and prompt response

The City is not liable for any hostile environment claim because it

promptly and effectively responded to plaintiff's first complaint in 9/98, and

the second complaint in 10/00. Perry v. Ethan Allen 115 F3d 143,153 (2d

Cir 1997) (Ethan Allen not liable even though a supervisor harassed

plaintiff, he wasn't her supervisor; when she complained, the harassment

stopped, because of its prompt and effective response).

In Perks v. Town of Huntington, 251 F Supp 2d 1143, 1162-1163

(EDNY 2003) a male harbormaster sued the town since a town council

woman with whom he had affair, cut his pay and filed a false police report

charging him with assaulting her, after he broke off the affair. The town

was not liable under 1983 since he alleged no policy or custom that

allowed her actions. The town had a policy against sexual harassment,

and he didn't tell anyone of the affair so the town didn't know of her

harassment against him until he reported it, and when it did, it promptly

investigated, found the councilwoman to be wrong, and removed her from

a position of control over him.

"The Court now moves to an assessment of Perks' Section 1983 claim against Huntington. The Supreme Court has held that a municipality cannot be held liable under Section 1983 on a theory of respondeat superior. *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Rather, a municipality can only be held liable if the unconstitutional conduct was undertaken pursuant to "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers ... [or] pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision making channels." *Id.* at 690-91, 98 S.Ct. 2018. When the claim is not that the municipality itself had an unconstitutional policy, but rather that the ***\*1163*** unconstitutional behavior was committed by a state actor whose actions represent official policy, the crucial question is whether, under state law, that official possessed final policymaking authority in the particular area involved. *See St. Louis v. Praprotnik,* 485 U.S. 112, 123, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988); *Jett v. Dallas Indep. Sch. Dist.,* 491 U.S. 701, 737, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989); *Pembaur v. Cincinnati,* 475 U.S. 469, 481-83, 106 S.Ct. 1292, 89 L.Ed.2d

452 (1986); *Jeffes v. Barnes,* 208 F.3d 49, 57 (2d Cir.2000).

      Thus, to make out a <u>Section 1983</u> claim against Huntington, Perks must either show (1) that Scarpati-Reilly's harassment of him resulted from a Town policy or (2) that Scarpati-Reilly herself had-- pursuant to state law--final authority over the particular area involved (namely, personnel decisions). Although Perks argues that both routes of liability are present here… he fails to satisfy the prerequisites of either."

      In <u>Perry v. Ethan Allen</u> 115 F3d 143,154 (2d Cir 1997) a female factory worker quit claiming a hostile work environment, and a jury verdict for Ethan Allen was affirmed, because when she complained, the harassment stopped, and the court found that the employer wasn't liable because of its prompt and effective response.

      There is no requirement that the investigation is "perfect" or the punishment is as severe as the victim would like. <u>Knabe v. The Boury Corp.</u> 114 F.3d 407, 413 (3rd Cir 1997) (Former female employee working as a waitress at Big Boy restaurant quit her job as after she claimed the Boury Corp. did not adequately handle her sexual harassment grievance against a fellow employee; summary judgment for employer affirmed, "Even though the company did not reprimand Humbrecht, as it well might have, we find **this remedial action adequate as a matter of law because it was reasonably calculated to prevent further harassment**. So long as the remedy is reasonably calculated to prevent future instances of harassment, the company cannot be held liable under a negligence

theory of agency"), citing <u>Ryczek v. Guest Servs. Inc</u>, 877 F Supp 754, 759 (DDC 1995) ("Even if the investigation was not handled perfectly, the plaintiff has presented no evidence to suggest that Guest Services did anything that would have allowed any harassment to continue.").

Plaintiff argues in her CHRO complaint and in this complaint that the City deviated from strict compliance with its municipal policy against sex harassment, which requires a complaint and an agreement in writing. As Mr. Stover states, the reason why Ms. Murphy's complaint was taken orally and the agreement with Mr. Vecchia not reduced to writing was at Ms. Murphy's request- she did not want publicity, or Mr. Vecchia to be "hurt" at work, only to be left alone. SOF 24. If a victim of harassment requests confidentiality, she cannot later claim her employer violated her rights under title VII because her request was honored. <u>Torres v. Pisano</u>, 116 F3d 625 (2d Cir 1997).

Ms. Murphy's co-workers went out of their way to help her once she told them that Mr. Vecchia was a problem. SOF 59, and affidavits of Ass't Chief Peter Brown, par. 16 and Dep. Chief Robert Lehn, par. 13, 14.

Ms. Murphy wrote in January 2002 to the criminal court judge when she protested a form of probation for Mr. Vecchia (written with the assistance of her attorney) that in 1998, "I had no desire to have Mr. Vecchia prosecuted or fired from

his job. I just wanted to be left alone**."** (p.2) and **"**The only reason that I did not pursue criminal charges or civil remedies in 1998 were Mr. Vecchia's repeated representations that he would get help and leave me alone… he stopped stalking me … because he had focused his anti-social behavior towards his ex-wife. After he stopped harassing her and her family, he refocused his threatening behavior towards me in October 2000**."** (SOF 42, Ex. C p.2, first and second paragraphs)

### c) Failure to prove custom or policy

The City is liable under 1983 only if there is evidence, as opposed to conclusory allegations, that it was the custom or policy of the City to allow sexual harassment. Patterson v. County of Oneida NY, 375 F3d 206 (2d Cir 2004) (probationary African-American corrections officer sued as since he was fired before end of probation; held- there was no evidence of "custom or policy" and summary judgment properly granted for the County; discussion of difference between proof of racial discrimination under Title 7 and 1983); Perks v. Town of Huntington, 251 F Supp 2d 1143 (EDNY 2003) (male harbormaster sued town and council woman with whom he had affair, and when he broke it off, she cut his pay and filed false police report charging him with assaulting her; H- town not liable for 1983 since town had policy against sexual harassment, and didn't know of her

harassment against him, and when it did, it promptly investigated her, found her to be wrong, and removed her from position of control over him).

Here there is no proof of any custom or policy that the City allowed Mr. Vecchia's off-site stalking, or failed to make a prompt investigation and effective response to either the September 1998 complaint to Mr. Stover or the October 2000 complaint to PO Strate.

Mr. Manfredonia's affidavit makes clear that Ms. Murphy's complaint of a co-worker stalking her off-duty was the first investigation made after the City's sexual harassment policy was expanded and adopted in June 1998.

In his affidavit, Mr. Manfredonia lists over 10 cases of sexual harassment that were investigated, and they were all after the Murphy investigation. Manfredonia affidavit, par. 27-28, pgs. 7-8.

The City promptly investigated her complaint in September 1998, directed Mr. Vecchia to stop harassing her, and this worked for over two years. When Ms. Murphy filed her complaint in October 2000 with the police department, there was a prompt and thorough investigation, resulting in Mr. Vecchia's arrest, and suspension from work, conviction, and termination.

Also, Mr. Manfredonia states that all sexual harassment complaints after Barbara Murphy's complaint were promptly investigated, determined to be true or false, and resulted in discipline, if appropriate.

Mr. Stover explains that the failure to fire Mr. Vecchia after his arrest was caused by his criminal attorney's denial of the charges, and the difficulty of proving that his "staring" at Ms. Murphy in the two chance meetings in Government center, or at Tarantos restaurant, was a breach of the agreement or harassment.

Also, the attempt to work out an agreement to allow the suspended Mr. Vecchia to return to work, or the decision to suspend Mr. Vecchia with pay, is not a violation of plaintiff's constitutional rights. In fact, it was a discretionary decision based upon the fact that the City could not violate Mr. Vecchia's rights as a union employee who was entitled to the presumption of innocence after he was arrested, and before he pled guilty.

**d) Failure to prove 1983- no intention to discriminate.**

In addition to the failure to prove "custom or policy", the plaintiff has failed to show that the City intentionally discriminated against her by the alleged failure to prevent Mr. Vecchia's renewal of his stalking in 2000, or to fire him when he was arrested. In <u>Lyon v. Jones</u> 2003 WL 1969321 (D.Conn.2003), a secretary sued for

failure to promote under both title 7 and 1983, and summary judgment was granted because there was no evidence of intentional discrimination.

As in <u>Lyon</u>, plaintiff fails to produce evidence that she is a "victim of intentional and arbitrary discrimination" or that she has been treated differently from others similarly situated, and there is no rational basis for the difference of treatment.

Because the Plaintiff has failed to provide any evidence 1) of a custom or policy or that 2) the City acted with the "intentional and arbitrary discrimination " necessary for a <u>§ 1983</u> violation, her claims under count 3 should be dismissed.

In fact, the record demonstrates that the City had a policy against sexual harassment and required employees to attend training with respect to sexual harassment. Also, the City promptly investigated and dealt with plaintiff's complaint so that Mr. Vecchia stopped harassing her for two years and plaintiff never complained during that two-year period. <u>Dawson v. County of Westchester</u> 2004 WL 3029736 (S.D.N.Y.2004). (female guards sued under 1983 for denial of equal protection; summary judgment granted for county as co-worker harassment not attributable to county).[2]

---

[2] "… county officials could not be held individually liable under <u>§ 1983</u> since corrections officers did not provide sufficient evidence to demonstrate that,

### e) plaintiff has suffered no damages as she continues to work

Plaintiff has suffered no adverse employment action. She was never demoted or affected in any of her work related benefits by the City's response to Mr. Vecchia's harassment in September, 1998 or by his arrest in November 2000 and subsequent suspension, and ultimate termination after his guilty plea.

"In analyzing a discrimination claim under Sec. 1983, courts borrow the burden-shifting framework of Title VII claims set out in McDonnell Douglas Corp. v. Green, 411 US 792, 802 (1973), and Annis v. County of Westchester, 136 F3d 239, 245 (2d Cir 1998). In order to establish a prima facie, a plaintiff must show: (1) membership in a protected class; (2) qualification for the position; (3) **an adverse employment action**; and (4) that the position was ultimately filled by a person who is not a member of the relevant protected class. McDonnell Douglas, 411 U.S. at 802, 93 S.Ct. at 1824; Fisher v. Vassar College, 114 F.3d 1332, 1335 (2d Cir.1997) (en banc), cert. denied, 522 U.S. 1075, 118 S.Ct. 851, 139 L.Ed.2d 752 (1998). For a discrimination claim to be actionable, Plaintiff must sustain a "materially adverse change in the terms and conditions of employment." Galabya v. New York City Bd. of Educ., 202 F.3d 636, 640 (2d Cir.2000); Hajjar v. Dayner, 96 F.Supp.2d 142 (D.Conn.,2000.) (failure of male guard to have transfer to a different shift to accommodate his child care needs was not an adverse employment action; summary judgment for state). (at 245, emphasis added)

because of defendants' failure, sex discrimination and a gender-hostile work environment became the accepted custom or practice of the county or correctional facility, and did not allege any facts or offered any evidence tending to show that, although defendants had actual notice of the sexual harassment, they demonstrated deliberate indifference in failing to remedy it more promptly."

In <u>Annis</u>, the court noted that the plaintiff, despite testimony of humiliation and counseling over various harassing acts of her supervisor (selective enforcement of work rules, gender-based ridicule of her in front of others, assignment to a "punishment post"), remained in her position as a police lieutenant. <u>Annis</u>, at p. 248.

Even as to "emotional distress", the plaintiff's deposition testimony undercuts her claim of damage. The plaintiff testified at her deposition that she mentioned to her psychiatrist the stalking by Mr. Vecchia briefly on 10/19/98, but then not again until **<u>March, 2001</u>**, long after he was arrested and suspended from his duties in December 2000. SOF 54, 55, 56.

The lack of any mention of stalking from her visits in October 1998 to March 30, 2001 so surprised the therapist that he  checked his notes from before to see if mentioned stalking more than the one time. (SOF 56, depo, p. 203).

In fact, the only time in the period of 1998 to 2001 when Plaintiff seems to be upset is when she expresses her anger that Mr. Vecchia gets a "paid vacation" (from his paid suspension from 12/00 to the date of his termination in 3/02); that she was asked by Mr. Manfredonia in 3/01 if she

could agree to terms that would allow Mr. Vecchia to return to work; and her frustration over the delays, continuances and her fear of appearing in criminal court.

In short, the plaintiff's anger and frustration comes only after Mr. Vecchia is arrested and suspended, not from her working for the City when Mr. Vecchia is still working.

The fact that Detective Strate uncovered other acts of stalking and harassment against his family, during the Vecchias' divorce proceedings from 1998 to 2000, is inadmissible as to Ms. Murphy's claim of hostile workplace. Leibovitz v. NYC Transit Authority, 252 F3d 179. 189 (2nd Cir 2001) (female employee's jury verdict for $60,000 for hostile workplace reversed as she was not the target of the harassment, other females were, and didn't affect the terms and conditions of her employment).

She doesn't complain about Mr. Vecchia from September 1998 to October 2000. In October 2000 she does complain to the police, as she worries about Mr. Vecchia's resumption of his stalking, but this arises out of four contacts that are difficult to fire a tenured employee over (chance

meetings in the hall where he "stares" at her, and a chance restaurant

meeting where she never went before where Mr. Vecchia "stared" at her).

As Mr. Vecchia states, he never spoke to plaintiff from September

1998 on. He never touched or otherwise harassed her (as he denies

"staring" at her or leaving anything on her lawn or deck). SOF 51.

Ms. Murphy is safest at her workplace at the Fire Department HQ,

as Mr. Vecchia never has gone there since she told him not to; he is

barred from admission; she is told that she doesn't have to go to

Government Center, as Peter Brown will do so, or she can go with

company.

### f) There is no liability for the state causes of action of negligent retention, negligent supervision, negligent or intentional infliction of emotional distress.

All of the negligence claims are barred by statute of limitations,

CGS  § 52-584 (2 years for negligence) or § 52-577 (3 years for

intentional tort). In Annis v. County of Westchester, 36 F3rd 239, 246 (2d

Cir 1998), the Second Circuit reversed a jury verdict against a supervisor

who harassed a female police lieutenant, because the court allowed

evidence of harassment prior to the three-year statute of limitations. The

female had sued for harassment, she had been transferred, and years went by before the harasser was transferred to a position of power over her, and resumed his harassment. The court rejected a "continuing violation" theory, at 246, noting a case where a 2-year gap defeated any claim of "continuing violation." _Selan v. Kiley,_ 969 F.2d 560, 565- 67 (7th Cir.1992) (two-year gap between discriminatory events "negates the contention that the acts were continuous or connected").

In this case, the statute of limitations is two years for negligence. All claims of negligent retention, etc. are barred since Mr. Vecchia was suspended from duty, and kept by a court order from stalking the plaintiff.

In Miner v. Town of Cheshire, 126 F Supp2d 184 (D Conn 2000) a former female police officer sued Cheshire and a male supervisor under title VII and CFEPA, and claims were dismissed because there was no continuing violation. The court ruled that the town's conduct did not support tort claims (Negligent supervision and obligation of fair dealing) . The doctrine of continuing violation was discussed, since the harassment ended and years went by without complaints until her worker's

compensation claim was contested, so she quit and then claimed that she was harassed.

The court held there was no continuing violation, and the need to sue in 90 days after right to sue letter was discussed. The Town was found not liable for intentional infliction of emotional distress under 52-557n, CGS.

The City has filed a special defense of "discretion" under 52-557n (a) (2), CGS ("… a political subdivision of the state shall not be liable for damages to person or property caused by… negligent acts or omissions which require the exercise of judgment or discretion as an official function of the authority expressly or impliedly granted by law…" As Judge Underhill noted in Miner, it is a discretionary decision to make policy decisions, such as whether to suspend Mr. Vecchia with pay, as opposed to termination, after his arrest.

If the City suspended Mr. Vecchia without pay, or terminated him before his guilty plea, it would be far worse for plaintiff if Mr. Vecchia won his grievance and was returned to work.

Mr. Stover stated that plaintiff's claims of harassment in October 2000 (staring at her twice at Government center, and once at Tarantos restaurant) were denied by Mr. Vecchia and his attorney in January and February 2001. (SOF 32, 33). **It was discretionary to wait until the criminal case was over to fire Mr. Vecchia**. SOF 36.

Also, it is discretionary for the City's finance board to seek some way to have Mr. Vecchia return to work during the pendency of the criminal action, if there could be an agreement with plaintiff. SOF 34, 35. After she rejected any such attempt, it was dropped, and the City continued to pay Mr. Vecchia for his suspension. Both the decision to suspend, and the attempt to have Mr. Vecchia return to work, are discretionary acts.

Mr. Vecchia's actions in October 2000, that could be proven, where three chance encounters, two in Government center, and one in a Stamford restaurant, and in these cases, Ms. Murphy claimed that he "stared" at her and didn't immediately leave, making her feel uncomfortable, which Mr. Vecchia denied.

It is hard to believe that, absent Mr. Vecchia's guilty plea for the October 2000 Taranto's incident (she and her date walked into the restaurant and saw Mr. Vecchia

who did not leave when he noticed her), the city could have successfully fired Mr. Vecchia.

Also, there is a jurisdictional problem with Plaintiff's negligence claims. Plaintiff as a member of a union failed to exhaust her remedy under the collective bargaining unit before she sued in federal court for negligent infliction of emotional distress, SOF 62.

In Sobczak v. Board of Education of the City of Meriden, 88 Conn App 99 (2005) a janitor sued the Board of Education for negligent infliction of emotional distress and other causes of action because he was forced to retire at age 59 after 23 years after he was threatened with an arrest. He claimed "hostile workplace". He started but did not pursue his union grievance procedure. The Appellate Court found that the trial court did not have subject matter jurisdiction over his state causes of action since he did not exhaust his union grievance procedure. The court noted "the claim that a hostile work environment is a problem incident to working conditions cannot be debated." ( at p.101).

**g) Count 13 fails because of failure to sue within 90 days**

Count 13 is similar to Title VII. Failure to sue within the 90 days of the release letter, pursuant to 46a-101, CGS, ("No action may be brought in accordance with § 46a-100 unless the complainant has received a release… (c) any action brought by the complainant in accordance with § 46a-100 **shall be brought within ninety days of the receipt of the release**…") deprives this court of jurisdiction over any claim under 46a-60. Garcia v. Saint Mary's Hosp 46 F Supp2d 140 ( D Conn 1999) (failure to obtain right to sue letter deprives court of jurisdiction); Nader v. Brunalli Const. Co 2002 WL 724597 ( D Conn 2002) (can't sue under § 46a-60 in federal court unless release letter obtained).

### IV. CONCLUSION

Plaintiff's claims under 1983 fail because (1) there was no "hostile workplace" despite the sporadic off-duty harassment of Mr. Vecchia; (2) even if the harassment was so severe and pervasive as to rise to the level of a hostile workplace, the city promptly investigated and enforced its policy against sexual harassment, since Mr. Vecchia stopped his harassment for two years, and after he resumed it in October 2000 he was suspended and fired; (3) there was no "custom and policy" to allow Mr. Vecchia to harass Ms. Murphy because the City enforced its policy  by giving Mr. Vecchia a "clear directive" in 1998, and suspending him

and firing him after his arrest in 2000; and, (4) there is no intentional discrimination or proof of disparate treatment by the City because Ms. Murphy was protected by her "family" at the Fire Department, and she continues to work there today.

There are no state causes of action because of (1) statute of limitations, (2) governmental immunity and (3) failure to exhaust her administrative remedy of filing a grievance under her collective bargaining agreement.

Plaintiff's claim under § 46a-60 (count 13) fails because of the failure to sue within 90 days of the release letter.

THE DEFENDANT, CITY OF STAMFORD

THOMAS M. CASSONE
DIRECTOR OF LEGAL AFFAIRS

BY_____

James V. Minor
Assistant Corporation Counsel
Bar No. CT 05963
888 Washington Blvd, Box 10152
Stamford, CT  06904-2152
(203) 977-4087 fax 977-5560

## CERTIFICATION

I hereby certify that a copy of the foregoing Memorandum of Law was mailed, postage prepaid, this 31st day of March, 2005, to the following:

Law Offices of Elisabeth S. Mauer, PC
871 Ethan Allen Hwy, Suite 202
Ridgefield, CT 06877

David Vecchia
5 Ridgefield Road
Bethel, CT 06801

_____
James V. Minor
Assistant Corporation Counsel