UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

-----------------------------------------------------X
BARBARA E. MURPHY,              :      DN 3:03 CV 00519 (MRK)
    Plaintiff,                              :
                                                  :
    v.                                          :
THE CITY OF STAMFORD and     :
DAVID VECCHIA,                       :      March 31, 2005
    Defendants.                           :
-----------------------------------------------------X

## LOCAL RULE 56(a)1 STATEMENT OF FACTS NOT IN DISPUTE

Defendant City of Stamford submits this Rule 56 (a)1 Statement of Facts in support of its Motion for Summary Judgment. Pursuant to Rule 56(a)3, each statement of fact is supported by a citation to affidavits, deposition excerpts or to Exhibits, in an Appendix hereto.

1. In 1996, Barbara Murphy was promoted from a position in the Finance Dept at 888 Washington Boulevard (Government Center) to Administrative Assistant at the Fire Department Headquarters at 629 Main Street, blocks away from Government Center. Plaintiff's Complaint, p. 3, ¶ 8; Plaintiff's Depo, p. 6, line 24 thru p. 7, line 7, p. 8, lines 4-16.

2. After 1996, Barbara Murphy reported to the Fire Chief and Assistant Chief Peter Brown. Plaintiff's Depo, p. 14, line 9 thru p. 15, line 2.

3. Defendant David Vecchia was the purchasing agent, and was a co-worker and not a supervisor to Barbara Murphy; he worked on the 10th floor of 888 Washington Blvd, Stamford, CT. Plaintiff's Complaint, p. 3, ¶ 7; Vecchia Depo, p. 5, line 5, p. 8, line 21; pg. 88, lines 16-24; Plaintiff's Depo, p. 9, line 11-19.

4. In 1997, after working on a committee with Mr. Vecchia, Mr. Vecchia went out to lunch with Ms. Murphy and told her that she is attractive. Plaintiff set all of this out in her arrest warrant affidavit dated November 26, 2000, a true and accurate copy of which is attached hereto as Ex. A. Plaintiff's Complaint, p. 3, ¶ 9; Plaintiff's Depo, p. 16, line 17 thru p. 17, line 21; Plaintiff's Arrest Warrant Affidavit ("AWA"), Ex. A, p. 2.

5. Ms. Murphy avoided Mr. Vecchia and did nothing to encourage any romantic relationship with him. Plaintiff's Complaint, p. 4, ¶ 13.

6. During 1997 to 1998, Mr. Vecchia started going to the same bars as Ms. Murphy, and annoyed her at these bars by trying to buy her drinks or food, which she refused. Plaintiff's Complaint, p. 4, ¶¶ 15&16; Plaintiff's Depo, p. 171, lines 4 thru 15.

2

7. On March 20, 1998, Mr. Vecchia, after drinking at the same bar as Ms. Murphy, broke into her car after midnight, parked at her home in Norwalk, CT. Plaintiff's Complaint, p. 7, ¶ 31; p. 6, ¶ 29; Plaintiff's Depo, p. 19, line 21-24;  EX. A, Arrest warrant affidavit ("AWA"), p. 4, 1st paragraph.

8. Ms. Murphy called Mr. Vecchia at his home to demand the return of items that he took from her car, and after he returned her briefcase, but not some of the items he took, she called her private attorney Mr. Ben Fraser for assistance.  Plaintiff's Complaint, p. 7, ¶¶ 32-34;  Plaintiff's Depo, p. 20, line 21 thru p. 23, line 20;  EX. A, AWA, p. 4, 2nd paragraph.

9. Attorney Fraser had meetings with Mr. Vecchia and, using a speakerphone, with Mr. Vecchia's sister, an attorney who assisted her brother. Plaintiff's Complaint, p. 8, ¶¶ 36&37; Plaintiff's Depo, p. 24, line 18 thru p. 25, line 19; EX. A, AWA, p. 5, 2nd and 3rd paragraphs.

10. Mr. Vecchia admitted to Ms. Murphy in a handwritten note that he broke into her, took her briefcase and damaged some items for which he paid $100. Plaintiff's Complaint, p. 8, ¶ 36; Plaintiff's Depo, p. 24, line 23 thru p. 25, line 4; EX. A, AWA, p. 5. 1st paragraph.

11. Mr. Vecchia, in his handwritten apology note, begged Ms. Murphy not to call the police or tell Stamford officials since he did not want to lose his job or be arrested.  Plaintiff's Complaint, p. 8, ¶¶ 36&37;  Plaintiff's Depo, p. 25, lines 16 thru 19.

12. Ms. Murphy and her attorney agreed not to report Mr. Vecchia's conduct to Stamford officials or the police if Mr. Vecchia left Ms. Murphy alone and got counseling. Vecchia dep p. 62, lines 14-25. Plaintiff's Complaint, p. 8, ¶ 37.

13. In June 1998 the City of Stamford adopted an expanded "sexual harassment policy" (updating a previous one dated 1993) which it required everyone to read and sign, and for all supervisors to attend a workshop explaining it. Manfredonia Affidavit, ¶ 4, p.2.

14. In September, 1998, Ms. Murphy told her private attorney, Ben Fraser, that Mr. Vecchia violated his agreement to leave her alone and was annoying her at bars, calling her from payphones, etc.  Plaintiff's Complaint, p. 8, ¶ 37; Plaintiff's Depo, p. 25, line 25 thru p. 26, line 8; EX. A, AWA, p. 5, 3rd and 4th paragraphs.

15. Mr. Fraser spoke to the City's Legal Director, Tom Cassone, who set up a meeting with Human Resources. Plaintiff's Complaint, pp. 8&9, ¶¶ 38&39; Plaintiff's Depo, p. 25, line 20; p. 31, lines 1-21.

16. On September 21, 1998, Ms. Murphy and Ben Fraser, her private attorney, met with Personnel (Bill Stover, Assistant Director, and Fred Manfredonia) to explain what Mr. Vecchia had been doing.  Plaintiff's Complaint, p. 9, ¶ 39; Plaintiff's Depo, p. 31, line 1 thru p. 32, line 13;  Stover Depo, p. 6, lines 3-18; (4) EX. A, AWA, p. 5, last paragraph.

17. On September 25, 1998 Personnel met with Mr. Vecchia, who admitted the March 1988 break-in of Ms. Murphy's car that he agreed to leave her alone. Plaintiff's Complaint, p. 9, ¶ 41; Stover Depo, p. 19, line 5-7.

18. On September 30, 1998 there was a second meeting with Ms. Murphy and her attorney, and they agreed with the following resolution - Mr. Vecchia would leave Ms. Murphy alone, not stalk or harass her, seek counseling, and keep the City informed that he was getting counseling.  Plaintiff's Complaint, p. 9, ¶ 42; Stover Depo, p. 29, line 19 thru p. 30, line 4; p. 71, line 16.

19. In September 1998, Mr. Vecchia's wife started a lawsuit for dissolution of marriage, partially because of Mr. Vecchia's actions towards Ms. Murphy. Vecchia depo p. 56, line 12-20; p. 62, line 23

20. On October 15, 1998, Bill Stover and Fred Manfredonia met with Mr. Vecchia and told him that he must not harass or annoy Ms. Murphy; that if he met her by chance, he would have to turn around and leave; that he would have to get counseling and keep the city informed of his counseling; that his supervisor would be told of this agreement; that his file would be kept "open" and if he violated this "clear directive" he would be disciplined, up to and including termination. Stover dep 30; Manfredonia aff ¶ 11-13; Vecchia dep pgs. 19, 20 and 63. Stover Depo, p. 27, line 3; p. 29, line 11-13, 19 thru p. 30, line 14; p. 31, line 18.

21. Mr. Vecchia's supervisor, Tom Hamilton, was told of the agreement that Mr. Vecchia was to leave Ms. Murphy alone. Hamilton depo. Pgs. 33-34; Manfredonia aff. ¶ 11.

22. Mr. Vecchia went to a counselor for several months and stopped. Stover depo pg. 74. Vecchia Depo, p. 19, line 20 thru 22; p. 20, line 22-25, p. 63, line 8-10; Stover Depo, p.74, line 22 to p. 75, line 8; Strate Depo, p. 49, line 20-21.

23. Mr. Stover kept an "investigation file" with his handwritten notes of the 9/21 and 9/30/98 meetings with Ms. Murphy and her attorney, and the 9/25/98

6

and 10/15/98 meetings with Mr. Vecchia. Stover depo p. 32, line 23-24. A true and accurate copy of those notes are attached hereto as Ex. G.

24. Mr. Stover admitted that there was no written agreement with Mr. Vecchia, but Mr. Stover felt that Mr. Vecchia would be hurt by such an agreement and Ms. Murphy did not want to hurt Mr. Vecchia at work, since the agreement would be in his file and a public document. Stover dep 28, line 10-17; p. 36, line 14-25.

25. Over the next two years, Ms. Murphy did not complain to Mr. Stover, Mr. Manfredonia or Mr. Cassone about Mr. Vecchia. Stover, depo p. 73, line 3-5. Manfredonia affidavit, p. 4, ¶ 14; Cassone aff ¶ 8.

26. Over the next two years, Mr. Stover, Mr. Cassone and Mr. Manfredonia asked Ms. Murphy if she was ok, and she told them she was. Stover dep p. 73, line 3-5; Cassone aff ¶ 8; Manfredonia aff ¶ 14.

27. In October, 2000, Ms. Murphy went to the Stamford police department for help since she thought Mr. Vecchia had broken his agreement, based upon

an incident where he stared at her at a Stamford restaurant, Taranto's and subsequently someone left a balloon on her lawn. Attached hereto is a true and accurate copy of that arrest warrant affidavit dated November 26, 2000. Ex. A, EX. A, AWA, p.2, 6, last paragraph.

28. In that affidavit, Ms. Murphy repeated the history of Mr. Vecchia's stalking her, the September 1998 agreement to leave her alone, and after a period of two years, he started again.Ex. A, EX. A, AWA pgs. 2-6.

29. The Stamford police officer (Detective Carl Strate) obtained Ms. Murphy's attorney's private notes of the March 1998 meetings, the notes of Mr. Stover as to the meetings in September, 1998, information from Mr. Vecchia's ex-wife, and information from two other police departments that confirmed that Mr. Vecchia had harassed and stalked members of his own family after the start of the dissolution in September, 1998 and during the period of 1998 to 2000. Strate Depo, pp. 20, line 12-12; p. 30, line8-23; p. 34, line 9-21; p. 40, line2 to p.43, line 22; p. 45, lines1-25; p. 52, lines 18-24; p. 55, lines 2-19; line 25 to p. 56, line 9.

30. On November 30, 2000 Mr. Vecchia was arrested, pursuant to an arrest warrant, for stalking Ms. Murphy. Plaintiff's Complaint, p. 13, ¶ 61.

31. On December 1, 2000, Mr. Vecchia was placed on paid administrative leave, pending a meeting where he could refute the charges made by Ms. Murphy that he started stalking her in October 2000. Plaintiff's Complaint, p. 15, ¶ 63; Stover Depo, p. 42, line 4-8, 18-22.

32. Mr. Katz, the criminal attorney for Mr. Vecchia, wrote Mr. Manfredonia by letter dated January 12, 2000, that Mr. Vecchia should not be contacted except through him, and that Mr. Vecchia did nothing wrong, since after September, 1998 there were only a few "chance meetings" with Ms. Murphy. Manfredonia affidavit, ¶ 20,

33. Mr. Katz again made this denial of any conduct that would constitute harassment or stalking at a meeting on February 7, 2001, with Mr. Stover and Mr. Manfredonia. Stover depo p. 47, line 25 to p. 48, line 12. Manfredonia affidavit ¶ 21.

34. In March, 2001, the Board of Finance of the City, upset that Mr. Vecchia was on paid leave during the pendency of the criminal case, requested Personnel to attempt to work out an agreement between Ms. Murphy and Mr. Vecchia so he could return to work, and not cross paths with Ms. Murphy, on or off duty. Plaintiff's Complaint, p. 16, ¶ 68; Stover Depo, p. 52, line 15 thru p. 53, line 18.

35. Mr. Manfredonia's attempt to have Mr. Vecchia and Ms. Murphy agree what after-hours bars and restaurants would be "off-limits" to Mr. Vecchia was rejected by Ms. Murphy. Manfredonia aff ¶ 22. Plaintiff's Complaint, p. 16, ¶ 68.

36. Mr. Stover did not feel that he could fire Mr. Vecchia until the criminal proceedings were concluded, as the charges involved only Ms. Murphy as to Mr. Vecchia's "staring" at her on three occasions in October and early November, 2000 (two at Government Center and one at Taranto's restaurant), and Ms. Murphy could not prove that Mr. Vecchia made a hang-up call from a Wilton payphone, or that Mr. Vecchia put a balloon on her lawn or a bullet on her deck. Stover dep pgs. 44, line 8-16; 24 to p.45, line 1-14; p.46, line 1-23.

37. Ms. Murphy retained an attorney, because she was angry that the City didn't stop Mr. Vecchia or handle her situation appropriately, and because she upset about the criminal case as it took long (over a year) and when she was called to testify and Mr. Vecchia stared at her. Plaintiff's Depo, p. 74, line 7 thru p. 76, line 24; p. 131, line 10 to 15; p. 133, line 3 to 13.

38. In August 2001, Mr. Vecchia was divorced, and the court noted his "bizarre fixation with a female co-worker", and he lost any interest in the marital home, Vecchia Depo, p. 56, line 24-25; p. 107, lines 11-23.

39. In September 2001, Ms. Murphy filed a complaint with EEOC and the Connecticut Commission on Human Rights ("CHRO") complaining the City of Stamford failed to prevent Mr. Vecchia's resumption of his stalking. Attached hereto as Ex. C is a true and accurate copy of Ms. Murphy's CHRO complaint.

40. By letter dated November 23, 2001, Mr. Vecchia's psychologist wrote an opinion that Mr. Vecchia was not a threat, had gone to counseling, kept his appointments, and had stopped drinking, which along with marital problems that were resolved by the divorce, was a cause of his behavior.

41. In January, 2002, Ms. Murphy wrote a letter to the criminal court judge protesting a Motion from Mr. Vecchia's attorney to allow him the benefits of "accelerated rehabilitation", which results in dismissal of criminal charges after a period of probation. A true and accurate copy of that letter is Ex. D (p. 2).

42. Ms. Murphy wrote in that letter, which she wrote with the assistance of her attorney Mr. Fraser, that in 1998, **"I had no desire to have Mr. Vecchia prosecuted or fired from his job. I just wanted to be left alone."** (p.2) and **"The only reason that I did not pursue criminal charges or civil remedies in 1998 were Mr. Vecchia's repeated representations that he would get help and leave me alone… he stopped stalking me … because he had focused his anti-social behavior towards his ex-wife. After he stopped harassing her and her family, he refocused his threatening behavior towards me in October 2000."** (Ex. C, p.2, 1st and 2nd paragraphs)

43. In January, 2002 Mr. Vecchia pled guilty to reduced charges of criminal trespassing, 1st degree, for the March 1998 car break-in and disorderly conduct for the October 2000 Taranto's restaurant incident, both misdemeanors, and he received a suspended sentence of two years and three years probation, with a requirement that he not contact Ms. Murphy. Vecchia Depo, p. 64, line 23 thru p. 65, line 19.

44. On February 20, 2002, after a pre-disciplinary hearing, Mr. Vecchia again denied that he violated the September 1998 agreement by his chance encounters in October and November, 2000, or that he made hang-up

phone calls, or that he put a balloon or bullet on Ms. Murphy's property. Stover dep pgs. 59, line 6-17, line 20 to p. 60, line 6.

45. After the pre-disciplinary meeting, and after consultation with Mr. Vecchia's superior Mr. Hamilton and Director of Legal Affairs Andrew MacDonald, Mr. Stover terminated Mr. Vecchia from his job. Mr. Vecchia's union filed a grievance under his union contract, which went to arbitration. Stover dep pgs. 62-63.

46. In March, 2002, CHRO released jurisdiction on Ms. Murphy's complaint after a finding on February 11, 2002 that "there is no reasonable probability that further investigation will result in a finding of reasonable cause" as "the record did not support your allegations that respondent failed to take appropriate corrective action in response to your harassment complaints". A copy of the 2/11/02 letter is attached as Ex. D and the "right to sue" letter is attached as Ex. E.

47. On April 24, 2002 EEOC issued a "dismissal and notice of rights" letter after adopting the CHRO determination and wrote that "you must file a

lawsuit within 90 days or Your right to sue" will be lost. A true and accurate copy of this letter is attached as Ex. E.

48. On February 14, 2003, after two days of hearings, the Connecticut Board of Mediation and Arbitration denied Mr. Vecchia's grievance that the City could not fire him for off-duty, off-site conduct. A true and accurate copy of that decision is attached hereto as Ex. F.

49. The decision in case no. 2002-A-0842 "C/S v. AFSCME, Local 2657 (David Vecchia)", concerning termination for inappropriate behavior and criminal conviction relating to that behavior, noted that Ms. Murphy "indicated to Mr. Stover and Mr. Manfredonia that she wanted Mr. Vecchia to leave her alone, but she did not want him to lose his job", and that she accepted the agreement that Mr. Vecchia get counseling, and leave her alone, or lose his job. Ex. F, p.6, 2nd par.

50. This decision rejected Mr. Vecchia's claim that he did nothing wrong, and that the City could not fire him for off-duty conduct, as the arbitrators held that the City could terminate for off-duty conduct if it led to a refusal or inability of others to work with the employee. The decision noted that

since Mr. Vecchia admitted culpability, was warned, and was unwilling to cease and desist his behavior to Ms. Murphy, his discharge was justifiable. Ex. F, second-to-last page.

51. At his deposition, Mr. Vecchia denied stalking Ms. Murphy; denied violating the no-contact agreement he made in September 1998, and denied that he ever created a hostile workplace for Ms. Murphy since he never contacted her at work after March 1998. Vecchia dep pgs. 105, line 10-12; 106, line 8-11; p. 109, line 6-9.

52. In March, 2003, Ms. Murphy filed this federal lawsuit, long after the 90 day period specified in March, 2002 by CHRO to sue under Sec. 46a-100, CGS.

53. Ms. Murphy continues to work in her position as Administrative Assistant to the Fire Chief at Fire Department Headquarters, and makes approximately $51,000 a year in salary. Ms. Murphy has not lost any salary or benefits during the period of 1998 to the present. Plaintiff's Depo, p. 7, line 23 thru p. 8, line 7.

54. Ms. Murphy went to a psychiatrist from 1998 to 2003, and disclosed his notes in a redacted version at her deposition. Plaintiff's Depo, p. 189, line 12.

55. Ms. Murphy refered to Mr. Vecchia in her second session on October 19, 1998 with this psychiatrist, but then never mentioned Mr. Vecchia during fourteen sessions in 1998 through 2001, although she discussed other personal problems in her life. Plaintiff's Depo, p. 196, 198, 201-203.

56. Ms. Murphy told her psychiatrist on March 30, 2001 that she was upset about Mr. Vecchia after he was arrested and suspended from his job. The psychiatrist was so surprised that he went back to his notes to double check his memory that Ms. Murphy never mentioned Mr. Vecchia from October 1998 to March 30, 2001. Plaintiff's dep pg 202, line 9-13..

57. After he was promoted to Director of Labor Relations and Chief Labor Negotiator in April 2001, Mr. Stover died in January 2004 after a brief battle with cancer.

58. Ms. Murphy's complaint in September 1998 to Human Resources and in October 2000 to the Stamford police were taken seriously, promptly

addressed, and resulted in an effective response. Manfredonia aff ¶ 24, 25,26; Cassone aff ¶ 17.

59. Ms. Murphy's workplace was not hostile since her co-workers at the Fire Department HQ did everything that she requested to ensure that Mr. Vecchia did not bother her. Ms. Murphy admitted that Assistant Fire Chief Peter Brown accommodated her by changing her duties so she didn't have to go to Government Center and restricting access to Vecchia, who never came to her work site after he agreed not to bother her in September 1998. Plaintiff's depo pgs. 159-160; Brown aff ¶ 16; Lehn aff; ¶ ¶ 13, 14.

60. Mr. Vecchia was effectively disciplined in September 1998 by his agreement to the clear directive to leave Ms. Murphy alone, and by his arrest and suspension in November and December 2000 when he resumed his harassing behavior of Ms. Murphy.

61. Mr. Vecchia was effectively disciplined by his termination in February 2002.

17

62. Ms. Murphy is a member of a union with a collective bargaining agreement, and she never filed a grievance about her complaints of the City's allegedly inadequate response to her harassment complaint. Manfredonia aff. ¶ ¶ 29, 30.

THE DEFENDANT, CITY OF STAMFORD

THOMAS M. CASSONE
DIRECTOR OF LEGAL AFFAIRS

BY_____
    James V. Minor
    Assistant Corporation Counsel
    Bar No. CT 05963
    888 Washington Boulevard, Box 10152
    Stamford, CT  06904-2152
    (203) 977-4087 fax 977-5560

## **CERTIFICATION**

I hereby certify that a copy of the foregoing Statement of Facts was mailed, postage prepaid, this 31st day of March, 2005, to the following:

Law Offices of Elisabeth S. Mauer, PC
871 Ethan Allen Hwy, Suite 202
Ridgefield, CT 06877

David Vecchia
5 Ridgefield Road
Bethel, CT 06801

_____
James V. Minor
Assistant Corporation Counsel

18