UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

---------------------------------------------------X
BARBARA E. MURPHY,                  :         DN 3:03 CV 00519 (MRK)
    Plaintiff,                              :
                                                  :
    v.                                          :
THE CITY OF STAMFORD and       :
DAVID VECCHIA,                          :         March 30, 2005
    Defendants.                          :
---------------------------------------------------X

## AFFIDAVIT OF THOMAS CASSONE

Thomas Cassone, being duly sworn deposes and says that:

1. I have been the Director of Legal Affairs of the City of Stamford for the period of December 1, 1995 to January 4, 1999, and from June 24, 2002 to present; I preceded and succeeded Andrew J. MacDonald who was the Director from January 4, 1999 to June 24, 2002; I also served as Acting Director of Public Safety, Health and Welfare for the City for an approximately 8 month period during the year 2000, including that fall. I am over the age of 18 and understand the nature of an oath.

2. I am familiar with the events in this matter as related herein; I make the following statements based upon personal knowledge.

3. In September 1998, attorney Ben Fraser, the personal attorney of Barbara Murphy, notified me that a co-employee, Mr. Vecchia, the City purchasing agent, had been stalking her during non-work hours. Ben Fraser was a former partner of my law firm, and a friend of Barbara Murphy's. I also knew Barbara Murphy, as she was a former student of mine at Norwalk Community College and we had occasionally played softball together, and I maintained casual but friendly relationships with both of them.

4. I told Ben Fraser that if Barbara Murphy needed the City's assistance, she should make a formal complaint to Human Resources, which she did.

5. On September 21, 1998, Bill Stover, who was the Assistant Director of Human Resources, and his assistant Fred Manfredonia, met with Barbara Murphy and attorney Ben Fraser, and they heard her complaints that Mr. Vecchia had been harassing her and stalking her, including an incident in March, 1998 when he broke into her car after midnight, when it was parked at her home. I do not remember being present at this meeting. Thereafter, Mr. Stover and Mr. Manfredonia met with Mr. Vecchia.

6. I knew from both Barbara Murphy and her attorney that they were satisfied with the result of the meetings that Human Resources had with her and Mr. Vecchia. Bill

    Stover, after consulting with Barbara Murphy and her attorney, gave Mr. Vecchia a clear directive that he must leave Barbara Murphy alone, and if he saw her, turn around; that he would get professional help by a counselor, and provide evidence to Human Resources that he was getting such help. The file was to be kept "open", and if he harassed or stalked her again, he would be terminated.

7. Barbara Murphy emphasized in September 1998 that she did not want to "hurt" David Vecchia, such as having him fired or arrested. She said she only wanted to be left alone.

8. From September 1998 to November 2000, I never heard from either Barbara Murphy or Ben Fraser that Mr. Vecchia resumed his harassment of her. During this time period, I asked her several times if everything was all right and Ms. Murphy told me that it was.

9. Barbara Murphy told me in 1998 that she was very concerned with confidentiality and that she did not want to be the subject of gossip; it was also the policy of sexual harassment investigations that sexual harassment investigations are kept confidential.

10. In November 2000, I learned that Detective Carl Strate of the Stamford police department was conducting a criminal investigation of Mr. Vecchia for stalking Ms. Murphy. I learned that Detective Strate expressed an interest in speaking with

Mr. Stover and Mr. Manfredonia. I told Mr. Stover and Mr. Manfredonia that they could talk to Detective Strate about the past meetings with the parties in 1998, and the agreement that Mr. Vecchia made to leave her alone.

11. I know that as a result of Detective Strate's investigation in 2000, Mr. Vecchia was arrested, and suspended from work with pay.

12. During the fall of 2000 when I was Acting Director of Public Safety, I would leave my law office early in the morning and return at the end of the City's workday, at approximately 4:30 p.m., to resume my private legal work.

13. Because of the fact that this investigation was confidential at the personal request of Barbara Murphy, I did not discuss this at my private law firm with anyone, including, my partner, Attorney Robert S. Bello. Therefore, he did not appreciate the problem when he was asked by Mr. Vecchia's brother to represent him at his arraignment when he was arrested overnight and brought to court on November 30, 2000. When I returned to my office that evening, it was the first time that I learned that Mr. Bello had appeared for him to argue his bond that day. I immediately told him that he could not do so, and he promptly told Mr. Vecchia that he could not represent him and he immediately returned Mr. Vecchia's retainer check prior to depositing it, by mail either that evening or the next day.

14. I called Ms. Murphy that evening or the next morning, and explained that my partner did not know of my involvement in the matter, and I apologized to her and explained that Mr. Bello did not know that there was a potential conflict of interest. At no time did I ever ask her for permission to have my partner represent Mr. Vecchia. I may have asked her if it bothered her that he had represented him at the arraignment, but did not intend it as a request for permission for Mr. Bello to continue to represent him as the decision to return Mr. Vecchia's retainer had already been made.

15. The Plaintiff's complaint about Mr. Vecchia was taken seriously in September 1998; there was a clear directive to Mr. Vecchia to leave Ms. Murphy alone, which he did for over two years; after he resumed his conduct, he was arrested, suspended from his duties and fired after he pled guilty.

16. Barbara Murphy told me after Mr. Vecchia's arrest that she did not wish to meet with Mr. Stover and Mr. Manfredonia in 2000 concerning Mr. Vecchia, and reiterated to me that she did not wish Mr. Vecchia to lose his job or get in trouble at work.  However, I encouraged her to do so, and she agreed on the condition that I sit in on the meeting with her.  The meeting was arranged for December 18, 2000, at the main fire station, and conducted at that time.  As a result of that meeting and Mr. Vecchia's arrest, Mr. Vecchia was suspended and eventually terminated.

17. I feel that Ms. Murphy's complaints in September 1998 and October 2000 were addressed promptly and effectively.

18. I believe that Barbara Murphy was in 1998, 2000, and is now an employee who is appreciated by her co-workers. Everyone, including me, tried to help her with her problem with Mr. Vecchia.

19. The above is true to the best of my knowledge and belief.

**Dated at the City of Stamford, Connecticut this 30th day of March 2005.**

_____
Thomas M. Cassone
Director of Legal Affairs
City of Stamford, Connecticut


Sworn and subscribed to me this 30th day of March 2005.


_____
James V. Minor
Commissioner of the Superior Court