JJ1) See the Sexual Harassment Policy attached as Plaintiff's Exhibit 13. Nowhere in the policy is there a requirement that an employee be convicted of a crime prior to termination.

JJ2) The City terminated Vecchia because Vecchia while at Toronto's restaurant, stared at Barbara Murphy, making her feel very uncomfortable to the point where she had to leave. Transcript of Vecchia Termination Proceeding at 175 (Testimony of Fred Manfredonia), lines 14-18.

JJ3) Vecchia's discharge is related to the City's sexual harassment policy adopted June 24, 1998, insofar as Vecchia engaged in inappropriate conduct towards an employee. Id. at 150 (Testimony of William Stover), lines 9-15.

JJ4) Officer Strate, an employee of the City of Stamford Police Department completed a thorough investigation of Vecchia's conduct sufficient to allow the City to terminate Vecchia without a confession by Vecchia. See Arrest Warrant Application, Plaintiff's Appendix, Exhibit 4.

37. Ms. Murphy retained an attorney, because she was angry that the City didn't stop Mr. Vecchia or handle her situation appropriately, and because she upset about the criminal case as it took long (over a year) and when she was called to testify

72

and Mr. Vecchia stared at her. Plaintiff's Depo, p. 74, line 7 thru p. 76, line 24; p. 131, line 10 to 15; p. 133, line 3 to 13.

    KK    Undisputed that Murphy went to Attorney Chimes because she didn't think the City was handling Vecchia and her situation appropriately. Further, Murphy does not dispute that she was upset that the criminal case took a long time to resolve, and that when she was called to testify in that case, Vecchia stared at her. However, any assertion that Murphy held the City responsible for the delay in Vecchia's criminal prosecution is disputed as without basis.

    38.    In August 2001, Mr. Vecchia was divorced, and the court noted his "bizarre fixation with a female co-worker", and he lost any interest in the marital home, Vecchia Depo, p. 56, line 24-25; p. 107, lines 11-23.

    L L.    Undisputed.

    39.    In September 2001, Ms. Murphy filed a complaint with EEOC and the Connecticut Commission on Human Rights ("CHRO") complaining the City of Stamford failed to prevent Mr. Vecchia's resumption of his stalking. Attached hereto as Ex. C is a true and accurate copy of Ms. Murphy's CHRO complaint.

    M M.    Undisputed.

73

40. By letter dated November 23, 2001, Mr. Vecchia's psychologist wrote an opinion that Mr. Vecchia was not a threat, had gone to counseling, kept his appointments, and had stopped drinking, which along with marital problems that were resolved by the divorce, was a cause of his behavior.

N N. Disputed. This document has not been produced in discovery to counsel's knowledge.

41. In January, 2002, Ms. Murphy wrote a letter to the criminal court judge protesting a Motion from Mr. Vecchia's attorney to allow him the benefits of "accelerated rehabilitation", which results in dismissal of criminal charges after a period of probation. A true and accurate copy of that letter is Ex. D (p. 2).

O O. Undisputed that Murphy prepared and submitted a letter to the Honorable Richard Comerford dated January 10, 2002, which, among other things, stated her opinion that accelerated rehabilitation was not appropriate for Vecchia. A true and correct copy of that letter was attached as Exhibit "C" to the City's Motion for Summary Judgment, not as Exhibit "D" as the City erroneously states in its Local Rule 56(a)(1) statement.

74

42. Ms. Murphy wrote in that letter, which she wrote with the assistance of her attorney Mr. Fraser, that in 1998, "I had no desire to have Mr. Vecchia prosecuted or fired from his job. I just wanted to be left alone." (p.2) and "The only reason that I did not pursue criminal charges or civil remedies in 1998 were Mr. Vecchia's repeated representations that he would get help and leave me alone... he stopped stalking me ... because he had focused his anti-social behavior towards his ex-wife. After he stopped harassing her and her family, he refocused his threatening behavior towards me in October 2000." (Ex. C, p.2, 1st and 2nd paragraphs)

PP. Undisputed that Murphy wrote the letter referenced in this paragraph, and that attorney Ben Frasier made some minor corrections to it, such as grammatical and stylistic corrections.

Disputed that any inference can be drawn that Vecchia did not stalk Murphy from October 1998 to October 2000. Disputed facts include:

PP1) Murphy does not know if the Stalking stopped for the two-year period because she had changed everything. She was in constant fear of seeing Vecchia. She stopped running outside, avoided going to the Government Center for fear of seeing Vecchia, she did not go to any training courses or meetings . Murphy Aff. Para 36.

PP2)   After September of 1998, Vecchia continued to go to Brennan's. During that period, he saw Barbara Murphy there "plenty of times". Vecchia Dep., p. 83, lines 1-15, and p. 96, lines 14-17. He did not cease his pattern of continuing to go to Brennan's regularly. Id.

43.   In January, 2002 Mr. Vecchia pled guilty to reduced charges of criminal trespassing, 1st degree, for the March 1998 car break-in and disorderly conduct for the October 2000 Taranto's restaurant incident, both misdemeanors, and he received a suspended sentence of two years and three years probation, with a requirement that he not contact Ms. Murphy. Vecchia Depo, p. 64, line 23 thru p. 65, line 19.

QQ.   Undisputed.

44.   On February 20, 2002, after a pre-disciplinary hearing, Mr. Vecchia again denied that he violated the September 1998 agreement by his chance encounters in October and November, 2000, or that he made hang-up phone calls, or that he put a balloon or bullet on Ms. Murphy's property. Stover dep pgs. 59, line 6-17, line 20 to p. 60, line 6.

RR.   Undisputed.

45. After the pre-disciplinary meeting, and after consultation with Mr. Vecchia's superior Mr. Hamilton and Director of Legal Affairs Andrew MacDonald, Mr. Stover terminated Mr. Vecchia from his job. Mr. Vecchia's union filed a grievance under his union contract, which went to arbitration. Stover dep pgs. 62-63.

SS. Undisputed.

46. In March, 2002, CHRO released jurisdiction on Ms. Murphy's complaint after a finding on February 11, 2002 that "there is no reasonable probability that further investigation will result in a finding of reasonable cause" as "the record did not support your allegations that respondent failed to take appropriate corrective action in response to your harassment complaints". A copy of the 2/11/02 letter is attached as Ex. D and the "right to sue" letter is attached as Ex. E.

TT. Undisputed.

47. On April 24, 2002 EEOC issued a "dismissal and notice of rights" letter after adopting the CHRO determination and wrote that "you must file a lawsuit within 90 days or Your right to sue" will be lost. A true and accurate copy of this letter is attached as Ex. E.

UU. Undisputed.

77

48.   On February 14, 2003, after two days of hearings, the Connecticut Board of Mediation and Arbitration denied Mr. Vecchia's grievance that the City could not fire him for off-duty, off-site conduct. A true and accurate copy of that decision is attached hereto as Ex. F.

W.   Undisputed that Vecchia's Grievance was denied and that the Exhibit provided is a true and accurate copy of the decision.

Disputed that this paragraph accurately summarizes the decision of the panel. The panel found that the City had just cause to terminate Vecchia because some anonymous co-workers in the finance department were afraid to have him return to work. See Exhibit F.

49.   The decision in case no. 2002-A-0842 "C/S v. AFSCME, Local 2657 (David Vecchia)", concerning termination for inappropriate behavior and criminal conviction relating to that behavior, noted that Ms. Murphy "indicated to Mr. Stover and Mr. Manfredonia that she wanted Mr. Vecchia to leave her alone, but she did not want him to lose his job", and that she accepted the agreement that Mr. Vecchia get counseling, and leave her alone, or lose his job. Ex. F, p.6, 2nd par.

WW.  Disputed. The passage cited is dicta and therefore, not binding as a finding of fact on this proceeding.

50.  This decision rejected Mr. Vecchia's claim that he did nothing wrong, and that the City could not fire him for off-duty conduct, as the arbitrators held that the City could terminate for off-duty conduct if it led to a refusal or inability of others to work with the employee. The decision noted that since Mr. Vecchia admitted culpability, was warned, and was unwilling to cease and desist his behavior to Ms. Murphy, his discharge was justifiable. Ex. F, second-to-last page.

XX.  Disputed. The City is citing a legal conclusion, not a fact, and thus is improperly using this pleading to make legal argument.

51.  At his deposition, Mr. Vecchia denied stalking Ms. Murphy; denied violating the no-contact agreement he made in September 1998, and denied that he ever created a hostile workplace for Ms. Murphy since he never contacted her at work after March 1998. Vecchia Dep., pp. 105, line 10-12; 106, line 8-11; p. 109, line 6-9.

YY.  Undisputed that Vecchia during his deposition testimony denied stalking Ms. Murphy and denied violating what he alleges were the terms of his September

1998 agreement with the City. The remainder of the paragraph is disputed as it does not accurately reflect the referenced testimony.

52. In March, 2003, Ms. Murphy filed this federal lawsuit, long after the 90 day period specified in March, 2002 by CHRO to sue under Sec. 46a-100, CGS.

ZZ. Undisputed.

53. Ms. Murphy continues to work in her position as Administrative Assistant to the Fire Chief at Fire Department Headquarters, and makes approximately $51,000 a year in salary. Ms. Murphy has not lost any salary or benefits during the period of 1998 to the present. Plaintiff's Depo, p. 7, line 23 thru p. 8, line 7.

AAA. Undisputed that Murphy continues to work for the City of Stamford and that she has not lost any salary or benefits except those that might have accrued to her from a promotion or a transfer to another available position located outside of the Fire House that she was prevented from applying for due to the City's failure to investigate and terminate Vecchia promptly.

54. Ms. Murphy went to a psychiatrist from 1998 to 2003, and disclosed his notes in a redacted version at her deposition. Plaintiff's Depo, p. 189, line 12.

80

BBB. Undisputed.

55. Ms. Murphy referred to Mr. Vecchia in her second session on October 19, 1998 with this psychiatrist, but then never mentioned Mr. Vecchia during fourteen sessions in 1998 through 2001, although she discussed other personal problems in her life. Plaintiff's Depo, p. 196, 198, 201-203.

CCC. Undisputed that the doctor's notes do not mention Vecchia during those sessions.

56. Ms. Murphy told her psychiatrist on March 30, 2001 that she was upset about Mr. Vecchia after he was arrested and suspended from his job. The psychiatrist was so surprised that he went back to his notes to double check his memory that Ms. Murphy never mentioned Mr. Vecchia from October 1998 to March 30, 2001. Plaintiff's dep pg 202, line 9-13..

DDD. Disputed that this paragraph accurately reflects either the notes in question or the doctor's actions at the time. The City has not deposed the doctor so it has no way to know what happened at that session, only what the notes reflect.

81

57.   After he was promoted to Director of Labor Relations and Chief Labor Negotiator in April 2001, Mr. Stover died in January 2004 after a brief battle with cancer.

EEE.   Disputed. This paragraph is completely unsupported by documents or testimony. It is undisputed that Mr. Stover died from cancer.

58.   Ms. Murphy's complaint in September 1998 to Human Resources and in October 2000 to the Stamford police were taken seriously, promptly addressed, and resulted in an effective response. Manfredonia aff ¶ 24, 25,26; Cassone aff ¶ 17.

FFF.   Disputed. This paragraph is a series of legal conclusions and opinions, not facts and is inappropriate in a Local Rule 56 (a) 1 statement.

59.   Ms. Murphy's workplace was not hostile since her co-workers at the Fire Department HQ did everything that she requested to ensure that Mr. Vecchia did not bother her. Ms. Murphy admitted that Assistant Fire Chief Peter Brown accommodated her by changing her duties so she didn't have to go to Government Center and restricting access to Vecchia, who never came to her work site after he agreed not to bother her in September 1998. Plaintiff's depo pgs. 159-160; Brown aff ¶ 16; Lehn aff; ¶ ¶ 13, 14.

FFF. Disputed. This paragraph is a series of legal conclusions and opinions, not facts and is inappropriate in a Local Rule 56 (a) 1 statement.

60. Mr. Vecchia was effectively disciplined in September 1998 by his agreement to the clear directive to leave Ms. Murphy alone, and by his arrest and suspension in November and December 2000 when he resumed his harassing behavior of Ms. Murphy.

HHH. Disputed. This paragraph is a series of legal conclusions and opinions, not facts wholly unsupported by testimony or documents and is inappropriate in a Local Rule 56 (a) 1 statement.

61. Mr. Vecchia was effectively disciplined by his termination in February 2002.

III. Disputed. This paragraph is a series of legal conclusions and opinions, not facts wholly unsupported by testimony or documents and is inappropriate in a Local Rule 56 (a) 1 statement.

62. Ms. Murphy is a member of a union with a collective bargaining agreement, and she never filed a grievance about her complaints of the City's

allegedly inadequate response to her harassment complaint. Manfredonia aff. ¶ ¶ 29, 30.

    JJJ.    Disputed.

    JJJ1) Barbara Murphy's union representative, Gloria Kelly declined to pursue a grievance on her behalf because she had an attorney. Murphy aff. Para 45.

        PLAINTIFF,
        BARBARA E. MURPHY

        BY: _____
        Elisabeth Seieroe Maurer (ct11445)
        Eva M. Puorro (ct25772)
        Maurer & Associates, PC
        871 Ethan Allen Hwy., Suite 202
        Ridgefield, CT 06877
        Phone (203) 438-1388
        Fax (203) 431-0357

UNITED STATES DISTRICT COURT
DISTRICT OF CONECTICUT

------------------------------------------------------------X
BARBARA E. MURPHY,                       :    DN 3:03 CV 00519 (MRK)
    Plaintiff,                                    :
v.                                                        :
                                                          :
THE CITY OF STAMFORD and      :
DAVID VECCHIA,                             :
    Defendants.                               :    May 10, 2005
------------------------------------------------------------X

## PLAINTIFF'S APPENDIX
## EXHIBITS, DEPOSITION EXCERPTS AND AFFIDAVITS

1. Transcript of October 21, 2002 [Day 2] hearing before the Board of Mediation and Arbitration, In the Matter of City of Stamford and AFSCME Co. 4, Local 2657 (David Vecchia Termination) (No. 2002-A-0842) (Dee, Arb.);

2. Response by David Vecchia dated May 12, 2004 to Plaintiff's Request for Admissions;

3. Transcript of deposition of David Vecchia, August 15, 2003;

4. Arrest Warrant Application dated November 29, 2000;

5. Voluntary Statement of Barbara Murphy dated October 26, 2000;

6. Transcript of deposition of Barbara Murphy, February 5, 2004;

7. Transcript of deposition of Barbara Murphy, June 11, 2004;

8. Affidavit of Barbara Murphy dated May 5, 2005;

9. Affidavit of Harold Jackson dated May 5, 2005;

10. Transcript of deposition of William Stover, August 26, 2003;

11. Transcript of deposition of Peter Brown, November 6, 2003;

12. Sexual Harassment Policy-City of Stamford-dated April 19, 1993;

13. Sexual Harassment Policy-City of Stamford-dated June 24, 1998;

14. Redacted notes from Barbara Murphy's psychiatrist; and

15. Handwritten letter from David Vecchia to Barbara Murphy.