FILED

2006 APR 10 P 12: 28

DISTRICT COURT
BRIDGEPORT, CONN.

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

---------------------------------------------------X
BARBARA E. MURPHY,                :    DN 3:03 CV 00519 (SRU)
   Plaintiff,                             :
                                                  :
   v.                                              :
THE CITY OF STAMFORD and          :
DAVID VECCHIA,                    :    April 7, 2006
   Defendants.                          :
---------------------------------------------------X

### DEFENDANT CITY OF STAMFORD'S MEMORANDUM IN OPPOSITION TO MOTION TO RECONSIDER DECISION ON SUMMARY JUDGMENT

The defendant, City of Stamford files this Memo in opposition to the Motion to Reconsider dated March 20, 2006 (#107), seeking to have the court reverse its decision to grant the City's Motion for Summary Judgment (#106).

1) <u>The court did not overlook material facts</u>

Plaintiff sued the City under 42 USC 1983 for sexual harassment by a co-employee in March 2003, and therefore the material time period for statute of limitations for Counts 2 and 3 (equal protection) and count 8 (breach of oral contract) is 3 years or March 2000 to March 2003.

A two year statute of limitations applies to the counts based upon negligence (counts 4, 5, 6 and 12).

Plaintiff's counsel agreed to withdraw count 13 (claim under Sec. 46a-40, CGS) since this lawsuit was filed after the 90 day right to sue letter from the CHRO (SOF 46, 47, Ex. E).

The court granted summary judgment on all claims against the City since a) the plaintiff failed to prove her Monell count, based upon violation of equal protection (failure of the City to stop a co-employee stalking plaintiff), as there were no evidence that a policymaker of the City was deliberately indifferent to plaintiff's rights, b) plaintiff failed to prove a hostile workplace and c) statute of limitations bars the state negligence and breach of oral contract claims.

Plaintiff alleged in her complaint that co-employee Mr. Vecchia was investigated by Human Resources of a complaint of stalking and harassment by Plaintiff in September 1998, and was given a directive to have no contact with Barbara Murphy. (SOF 20). Plaintiff and her private attorney were told of this resolution and agreed with it. (SOF 17-20). Mr. Vecchia did "leave her alone" until October 2000, when he stared at Plaintiff at a local restaurant, and later at two chance meetings in Government center. Plaintiff went to the police and filed a sworn affidavit for his arrest (SOF 27, Ex. A, arrest warrant affidavit 10/26/00); in it she admitted that Mr. Vecchia left her alone until October 2000 (id, Ex. A, p. 6, last

paragraph); the police investigated; Mr. Vecchia was arrested and then suspended by the City of Stamford from his duties as purchasing agent. (SOF 31).

After the criminal proceedings resulted in a guilty plea to two misdemeanors (the 1998 break-in to plaintiff's car at her house in Norwalk CT and the October 2000 restaurant staring incident) Mr. Vecchia was terminated by the City. (SOF 43, 45)

Ms. Murphy continues to work for the City and has not lost any salary or benefits. (SOF 53).

The court questioned plaintiff's attorney about what acts during this time period a policy maker (either the Director of Legal Affairs Tom Cassone or the Director of Human Resources Jim Haselkamp) observed that constituted deliberate indifference to sexual harassment or stalking, similar to the alleged actions of the police chief of West Hartford in <u>Amnesty America v. Town of West Hartford</u>, 361 F.3d 113, 128 (2d Cir 2004) (chief allegedly observed and participated in acts of excessive force in removing abortion clinic protesters from abortion clinic).

After plaintiff's complaint to Human Resources in September 1998, **plaintiff did not complain to either the Director of Legal Affairs Tom Cassone or the Director of Human Resources, James Haselkamp** about the failure of the assistant HR director or Mr. Manfredonia, an HR investigator, to obtain a written

agreement or to monitor Mr. Vecchia (SOF 25); from September 1998 to October 1998 plaintiff was asked periodically by Attorney Cassone if "everything was ok" and she said it was. (SOF 26).

In October 1998 plaintiff gave a sworn statement that lead to the arrest of Mr. Vecchia. Ex. A to Defendant's MSJ is the arrest warrant application dated 11/29/00 which notes that after the September 1998 Human Resources investigation Mr. Vecchia "suspended his conduct" until October 2000 when he stared at plaintiff in the Stamford restaurant.(SOF 28, Ex. A, p. 6).

Plaintiff stated in her sworn complaint to CHRO dated 9/26/01 that Mr. Vecchia resumed his stalking behavior in October 2000. (Ex. B, par. 40-41)

Plaintiff's admitted a third time that Mr. Vecchia suspended his harassment in plaintiff's letter dated January 10, 2002 to the criminal court judge protesting Mr. Vecchia's request for probation (SOF 41, 42; Ex C, p.2- **"The only reason that I did not pursue criminal charges or civil remedies in 1998 were Mr. Vecchia's repeated representations that he would get help and leave me alone... he stopped stalking me ... because he had focused his anti-social behavior towards his ex-wife. After he stopped harassing her and her family, he refocused his threatening behavior towards me in October 2000."** (Ex. C, p.2)

Plaintiff testified before the Connecticut Board of Mediation and Arbitration, which upheld Mr. Vecchia's termination, and that decision noted that Ms. Murphy in September 1998 "indicated to Mr. Stover and Mr. Manfredonia that she wanted Mr. Vecchia to leave her alone, but she did not want him to lose his job", and that she accepted the agreement that Mr. Vecchia get counseling, and leave her alone, or lose his job. (SOF 49, Ex. F, p.6, 2nd par., decision of Board).

Plaintiff has not shown admissible evidence of any facts during this time period of September 1998 to March 2003 implicating a policy maker of Stamford in unconstitutional action.

The court also ruled that the allegations of "harassment" starting in October 2000 with the Taranto's restaurant meeting, and 2 chance meetings in Government center where Plaintiff claimed that Mr. Vecchia stared at her instead of turning on his heels, did not create a hostile workplace since the staring at the Stamford restaurant and the two staring incidents at Government center were not severe and pervasive conduct <u>in the workplace</u>. It was conduct that was sporadic, and with two exceptions of staring at the reservoir occurred off- duty and off-site.

### The court did not overlook controlling law

Plaintiff claims that the court overlooked controlling law in two cases.

5

In Gierlinger v. New York State Police, 15 F.3d 32, 34 (2d Cir 1994), a jury found that plaintiff, a probationary female state police candidate, was not hired because of discrimination by a supervisor who ignored her complaint of sexual harassment and gave her an unfavorable recommendation to retaliate against her Title VII complaint of sexual harassment. See also subsequent appeal affirming jury verdict against the supervisor, John Gleason- Gierlinger v. Gleason, 160 F.3d 858, 863 (2nd Cir. 1998). Here no policymaker did anything equivalent such as give plaintiff an unfavorable recommendation resulting in her job loss; in fact plaintiff works today for the same department with no loss of salary or benefits.

In Patterson v. County of Oneida NY, 375 F3d 206, 228-229 (2d Cir 2004) a probationary Corrections officer sued for termination prior to end of probation, and the court upheld dismissal of Section 1983 and 1981 claims against the county for failure to prove a Monell claim; the court reversed as to some state claims and Section 1983, 1981 claims against two individuals for hostile work environment (being beaten and covered with shaving cream; an officer refused to return his salute) **in their individual capacities**.

There are no facts in this case where a policymaker did anything such as retaliate against plaintiff, or condone Mr. Vecchia's actions. Thus the court

6

properly granted summary judgment for the city on all claims, leaving plaintiff with her lawsuit against Mr. Vecchia individually.

Compared to the supervisors in <u>Gierlinger</u> and <u>Patterson</u>, the policymakers in September 1998 (Director of Legal Affairs Tom Cassone and HR Director Haselkamp) addressed her complaint; her complaint was promptly investigated resulting in a clear directive to Mr. Vecchia to "leave her alone" which he did for two years, until October 2000; in October, 2000, Plaintiff turned to the police for assistance, and the police did a prompt and thorough investigation resulting in Mr. Vecchia's arrest; after Mr. Vecchia's arrest he was suspended and ultimately terminated.

The plaintiff lists acts at pg. 13-19 that either are outside the statute of limitations of three years (sending candy, seeing Vecchia in her office, incidents off-duty at local bars, Mr. Vecchia's break-in in 3/98 of her car at home, all of which occurred prior to September 1998) or were discretionary decisions that do not constitute unconstitutional denial of equal protection, such as putting Mr. Vecchia on paid leave after he was arrested until he pled guilty and then terminating him based upon his guilty plea to a misdemeanor for the October 2000 restaurant incident, and one phone call made by Mr. Manfredonia seeking a way to have Mr. Vecchia return to work in March 2001.

The cases cited by plaintiff at p. 23 were discussed at oral argument, and the court noted that the Delta flight attendant who drugged and raped another flight attendant at a hotel on a layover from a Rome flight was part of the flight attendant's workplace. Here, the court noted, the conduct in October 2000 was sporadic in the case of the two chance meetings at Government center, or off-duty in the case of the restaurant meeting, and this was not severe, persistent conduct that made plaintiff's workplace intolerable.

Contrary to the cases cited by plaintiff, Ms. Murphy's workplace was not permeated with "discriminatory intimidation, ridicule, and insult" that is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Harris v. Forklift Systems, Inc., 510 US 17, 21 (1993).

In conclusion, the court should deny Plaintiff's motion to reconsider its decision to grant the City of Stamford's Motion for Summary Judgment.

There is no mistake of law or fact that requires the court to reverse its grant of summary judgment to the City of Stamford.

THE DEFENDANT, CITY OF STAMFORD

THOMAS M. CASSONE
DIRECTOR OF LEGAL AFFAIRS

BY _____
James V. Minor
Assistant Corporation Counsel
Bar No. CT 05963
888 Washington Blvd, Box 10152
Stamford, CT 06904-2152
(203) 977-4087 fax 977-5560

## **CERTIFICATION**

I hereby certify that a copy of the foregoing Memorandum was mailed, postage prepaid, this 6th day of April, to the following:

Law Offices of Elisabeth S. Mauer, PC    David Vecchia
871 Ethan Allen Hwy, Suite 202           5 Ridgefield Road
Ridgefield, CT 06877                     Bethel, CT 06801

_____
James V. Minor
Assistant Corporation Counsel